**In re KARSH TRAVEL, INC., Debtor.**

**KARSH TRAVEL, INC., Plaintiff,**

v.

**AIRLINES REPORTING CORP., Defendant.**

**Bankruptcy No. 1–87–02212.
Adv. No. 1–88–0061.**

United States Bankruptcy Court, N.D. California.

June 27, 1988.

Jack C. Hamson, Ukiah, Cal., for debtor.

William Webb Farrer, San Francisco, Cal., for defendant.

### MEMORANDUM OF DECISION

ALAN JAROSLOVSKY, Bankruptcy Judge.

The debtor is an independent travel agency. Defendant Airlines Reporting Corporation ("ARC") is a nationwide clearinghouse established by the airlines industry to give independent travel agents the ability to issue airline tickets. Prior to the debtor's Chapter 11 filing, it had entered into ARC's standard Agent Reporting Agreement whereby blank tickets are issued to travel agents who then sell them to consumers and account for the sales to ARC.

Just prior to the filing, a check for $9,613.23 from the debtor to ARC was returned to ARC due to insufficient funds. Pursuant to the agreement, the debtor had posted a bond which is sufficient to satisfy the obligation in full if it is not paid by the

debtor as part of its reorganization process.

At the time the debtor filed its petition on December 24, 1987, it had a considerable amount of blank tickets on hand which it proceeded to issue normally and made the proper remittances to ARC. However, when the debtor ran out and requested more from ARC pursuant to the agreement, ARC refused because the debtor had not made the prepetition check good. ARC also requested the debtor to return all documents and hardware used in issuing tickets "pending payment of the pre-petition debt."

■ The debtor seeks injunctive relief and an order authorizing it to assume the contract, as well as damages for violation of the automatic stay. ARC argues that the contract is one for the extension of financing or financial accommodations and is therefore unassumable pursuant to section 365(c)(2) of the Bankruptcy Code. It further seeks relief from the automatic stay to take back the documents and hardware, and denies that its prior conduct, documented in a letter it admits it sent, constitutes a violation of the stay. Since there are no disputed issues of fact, the Court can resolve the matter summarily.

There are two reported cases on the issue of assumability of the ARC standard agreement. In *Matter of Wills Travel Service, Inc.* (Bkrtcy.M.D.Fla.1987) 72 B.R. 380, 383, the court rejected ARC's argument on the grounds that ARC neither directly nor through the air carriers ever intended to extend any credit to the debtor and that the agreement was an ordinary and assumable agency agreement.[1] However, in *Matter of Lockspur, Inc.* (Bkrtcy. E.D.La.1988) 82 B.R. 37, the court reached the opposite result.

Notwithstanding *Lockspur*, this Court believes that the contract is clearly assumable for two reasons, both of which compel a finding against ARC.

■ First, it is clear that *Wills Travel* is correct in its analysis that the agreement does not fall under section 365(c)(2) because the agreement is not properly characterized as one to extend financing to the debtor. While it is uncontested that the blank ticket stock has value and may be readily converted to cash, this alone does not turn the agreement into a loan obligation. Airline tickets are considered as ordinary goods or property. *U.S. v. Weinstein* (9th Cir.1987) 834 F.2d 1454, 1464. The mere fact that a contract has as its subject property of value does not turn it into a contract to make a loan.

Second, and more fundamental, is a substantial matter of policy. As a nationwide clearinghouse for travel agencies, the ARC agreement is a *sine qua non* for any independent travel agency business. If the Court were to agree with ARC that the agreement is not assumable then in effect ARC, and not the bankruptcy courts, would be in control of virtually all travel agency bankruptcies nationwide, even where the debtor was not in default in its obligations to ARC. This result is clearly contrary to congressional intent to place the reorganization of all businesses except financial institutions in the hands of the bankruptcy courts. See section 109(d) of the Bankruptcy Code. Although the Court is reluctant to exercise its powers under section 105(a) of the Code except in compelling circumstances, and is mindful that those powers may not be exercised in such a manner as to conflict with the express language of the Code, the Court would have no hesitancy in invoking those powers if it became necessary in order to avoid surrendering control of travel agency reorganizations to ARC.

■ Moreover, even if ARC is correct and the contract is not assumable ARC is still liable to the debtor for willful violation of the automatic stay. Section 362(a)(6) of the Code prohibits *any* act to collect a claim against the debtor that arose before the commencement of the case. In its letter to the debtor of February 24, 1988,

---

1. ARC makes much of the fact that the court which decided *Wills Travel* has recently vacated its order. However, it appears from inquiry to the court that this was done to correct small technicalities and that the court stands by its analysis. As a nationwide entity serving almost all travel agents, ARC has a strong incentive to remove adverse precedent.

ARC made it clear that it was refusing to send more tickets and was requesting return of the documents and hardware because the pre-petition returned check had not been made good, and that this position would be maintained "pending payment of the prepetition debt." It is a clear violation of the automatic stay to refuse to do business with a debtor unless prepetition debt is payed. *In re Haffner* (Bkrtcy.N.D.Ind. 1982) 25 B.R. 882, 886–87 ("[R]efusal to enter into the transaction except for payment of prepetition debts is itself a type of action [prohibited by section 362(a)(6) ];" *In re Sportfame of Ohio, Inc.* (Bkrtcy.N.D. Ohio 1984) 40 B.R. 47, 50 (refusal to deal with debtor in order to coerce payment of prepetition debt, albeit passive, was act to collect debt in violation of section 362(a)(6)).

The Ninth Circuit has specifically held that even where a contract is not assumable, the automatic stay still prohibits the acts enumerated in section 362(a). *In re Computer Communications, Inc.* (9th Cir. 1987) 824 F.2d 725, 730. ARC distinguishes this case by the sophistry that here ARC did not terminate the contract, but only refused to honor it. This is a meaningless distinction, as however one characterizes ARC's actions they were acts done in an attempt to collect prepetition indebtedness. As the Ninth Circuit noted in *Computer Communications:*

> The automatic stay statute itself provides a summary procedure for obtaining relief from the stay. All parties benefit from the fair and orderly process contemplated by the automatic stay and judicial relief procedure. Judicial toleration of an alternative self-help and post hoc justification would defeat the purpose of the automatic stay.

824 F.2d at 731. It is no defense for ARC to say that the court would have modified the stay to allow ARC to do what it did if it had been asked first. The act of seeking relief from the stay is not meaningless or minesterial; it is an acknowledgment of the bankruptcy court's control over all aspects of the reorganization.

The Court accordingly finds that the agreement between the debtor and ARC is the normal sort of agreement which is assumable pursuant to section 365(a) of the Code, and that ARC violated the automatic stay by refusing to issue new ticket stock to the debtor unless the prepetition debt was paid. The Court will therefore order as follows:

1. The debtor will recover damages from ARC in the amount of its lost profits and attorneys' fees incurred as a result of ARC's refusal to send more tickets or $5,000.00, whichever is greater. Such damages will be payable 60 days from the date of this memorandum. If the debtor alleges that its damages and attorneys' fees exceed $5,000.00, it shall immediately obtain a hearing date and give ARC notice of it.

2. The debtor shall have until the sixtieth day after the date of this memorandum to assume the ARC agreement by tendering to ARC all past due amounts plus interest at the rate of ten percent per annum and posting a bond in the amount required by the agreement. This provision assumes that the debtor is otherwise in full compliance with the agreement. The debtor may use the damages set forth in the prior paragraph as a credit.

3. The automatic stay is modified, effective sixty days after the date of this memorandum, so as to allow ARC to terminate its obligations under the agreement and take possession of its documentation and hardware if by that date the debtor is not in full compliance with the agreement, or if the debtor thereafter is in default.

4. The temporary arrangement previously ordered by the Court shall remain in effect until the agreement is assumed or ARC is entitled to relief from the stay pursuant to the preceding paragraph.

If the debtor's damages and attorneys' fees do not exceed $5,000.00, counsel for the debtor shall immediately submit an appropriate form of judgment. If a hearing is set to fix actual damages, the judgment shall be submitted immediately upon conclusion of that hearing.