In re THE TRAVEL SHOPPE, INC. d/b/a World Explorers, Debtor.

Bankruptcy No. 88–01974.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 2, 1988.

Michael J. Ahlstrom, Marietta, Ga., for debtor-in-possession.

Richard G. Murphy, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for Airlines Reporting Corp.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This case is before the Court on a motion by Airlines Reporting Corporation ("ARC") for relief from the automatic stay and a motion by the debtor to assume an executory contract with ARC. The motions came on for hearing on July 1, 1988.[1]

The debtor, The Travel Shoppe, Inc. ("Travel Shoppe"), is a travel agent. The debtor filed a petition under Chapter 11 of the Bankruptcy Code on March 3, 1988. ARC serves as a clearing house for airline tickets sold by travel agents. The parties dispute the status of their contractual relationship at the time the Chapter 11 petition was filed. ARC maintains that the contractual relationship was terminated prior to the Chapter 11 filing and that there is no executory agreement which can be assumed pursuant to 11 U.S.C. § 365. The debtor contends that the termination was not effective until after the Chapter 11 filing and that the termination in any event did not affect a new contract between the parties which the debtor argues it should be permitted to assume under 11 U.S.C. § 365.

The remarkable, although undisputed, facts are as follows. On or about January 21, 1986, the debtor and ARC entered into an agreement entitled The Airlines Reporting Corporation Agent Reporting Agreement ("Old Agreement"). While the Old Agreement is lengthy, its stated purpose is to facilitate the issuance of airline tickets to the public by agents of air carriers. The basic mechanics of the arrangement are that ARC provides blank traffic documents and airline identification plates to the travel agent. When a travel agent sells an airline ticket, it writes the ticket on a traffic document and imprints the airline plate and the travel agent's name on the document. The travel agent also has certain duties including the filing of frequent reports, the maintenance of a bond, and the maintenance of a bank account for the benefit of ARC for the deposit of monies collected from the sale of airline tickets. ARC is entitled to draw on the account set up to handle funds collected by the travel agent.

On or about October 29, 1986, ARC filed a complaint with the Travel Agent Commissioner pursuant to the Old Agreement, charging Travel Shoppe with breaches of the Old Agreement. On June 4, 1987, the Travel Agent Commissioner found that the debtor could not be relied upon to comply with the terms of the Old Agreement and ordered Travel Shoppe to be removed from ARC's agency list. The debtor sought review of that decision by an independent arbitrator pursuant to the procedure set forth in the Old Agreement.

On or about January 18, 1988, ARC sent a New Memorandum of Agreement, signed by ARC, to each of its agents on its agency list. The New Memorandum of Agreement was sent to all agents as a result of a settlement reached in a class action lawsuit brought by the Association of Retail Travel Agents against ARC.

---

1. The Court also held hearings on April 13, 1988 and April 28, 1988 on ARC's motion for a temporary restraining order in an adversary proceeding filed by ARC, Adversary Proceeding No. 88–137A.

On February 10, 1988, the independent arbitrator entered a decision affirming the June 4, 1987 order of the Travel Agent Commissioner. On or about February 18, 1988, the independent arbitrator mailed his February 10, 1988 decision to counsel for ARC and counsel for the debtor.

On February 19, 1988, ARC sent the debtor a letter enclosing a second New Memorandum of Agreement requesting immediate execution. On February 24, 1988, Patricia A. Byland, manager of Travel Shoppe, signed the New Memorandum of Agreement and returned it to ARC. The New Memorandum of Agreement stated that the parties agree to be bound by the terms of the ARC Agent Reporting Agreement, effective as of March 7, 1988 ("New Agreement"). The main difference between the Old Agreement and the New Agreement is that the New Agreement contains a new procedure for resolving disputes between the agent and ARC in which the Travel Agent Commissioner is replaced by a Travel Agent Arbiter not employed by ARC.

On March 2, 1988, someone associated with ARC telephoned Ms. Byland and said that ARC would be sending a letter by Federal Express to Travel Shoppe and that ARC was sending someone from Equifax to Travel Shoppe on March 3, 1988 to collect the airline plates and traffic documents.

On the following day, March 3, 1988, the debtor filed its Chapter 11 petition at 8:08 a.m. At approximately 10:00 a.m., the debtor received the letter from ARC stating that:

[p]ursuant to the June 4, 1987 decision of the Travel Agent Commissioner in docket 86–100B/C, as affirmed by the arbitrator's decision dated February 10, 1988, this is to advise you that your Agent Reporting Agreement is hereby terminated effective March 3, 1988.

The first issue raised in ARC's motion to lift the stay is whether the Old Agreement was terminated prior to the Chapter 11 filing. ARC contends that the Old Agreement was terminated prior to the filing and that the stay should be lifted so that it can obtain possession of the traffic documents and airline identification plates. Whether the notice of termination was received one day before bankruptcy or two hours after bankruptcy is relevant only if the Court decides that the New Agreement is affected by a termination under the Old Agreement.

The key issue is whether the New Agreement is terminated or unenforceable if ARC terminates the debtor under the Old Agreement. Counsel for ARC has advised the Court that neither the consent judgment nor the settlement agreement entered into in the class action case which precipitated the mailing of the New Agreement contains any provisions addressing the status of agents whose disputes were in the process of being resolved under the dispute resolution procedures outlined in the Old Agreement.

Both the debtor and ARC argue that Section XXVIII of the New Agreement supports their respective positions. That Section reads as follows (with emphasis added):

## SECTION XXVIII: OTHER AGREEMENTS SUPERSEDED

This Agreement shall supersede any and all prior agreements between the agent and any carrier party to the carrier services agreement concerning the issuance of ARC traffic documents for such party, including the Air Traffic Conference of America Passenger Sales Agency Agreement, *except with respect to rights and liabilities thereunder existing at the date hereof.*

The parties offer different constructions of the language "except with respect to the rights and liabilities thereunder existing at the date hereof." ARC contends that "the date hereof" means March 7, 1988, the effective date of the New Agreement. ARC contends that Section XXVIII means that its "right" to terminate an agent under the Old Agreement is unaffected by the New Agreement; that it had a right to terminate the Old Agreement when the arbitrator affirmed the decision of the Travel

Agency Commissioner in February of 1988, and that the parties did not intend for the New Agreement to come into existence if the Old Agreement was terminated.

The debtor disagrees with ARC's construction and contends that the New Agreement has a different dispute resolution procedure such that it cannot be terminated under the procedure set forth in the Old Agreement.

While neither the Old Agreement nor the New Agreement contains a choice of law provision, the parties agree that Georgia law should apply. The cardinal rule of construction is to ascertain the intention of the parties. O.C.G.A. § 13–2–3. With the limited evidence presented on the circumstances surrounding the transmission and execution of the New Agreement, the Court cannot divine what meaning the parties placed on Section XXVIII of the New Agreement at the time of execution.

While the Old Agreement may have been terminable pursuant to the dispute resolution procedure outlined in the Old Agreement, the New Agreement was entered into and signed by ARC and the debtor. Counsel for ARC had originally suggested at a hearing on April 28, 1988 that the New Agreement was sent by ARC due to a clerical error, but counsel for ARC retracted that suggestion at the July 1, 1988 hearing and stated that the New Agreement was sent because the debtor was on the agency list. In briefs filed in opposition to the debtor's motion to assume an executory contract, ARC also argued that the New Agreement was unenforceable because the parties did not intend to be bound by the New Agreement if ARC prevailed before the independent arbitrator. However, at the July 1, 1988 hearing, ARC abandoned that position and there was no evidence presented that the parties thought that the New Agreement would not go into effect if the Old Agreement was terminated.

■ The difficulty with ARC's construction of Section XXVIII is that there is no evidence that the parties intended the New Agreement to be unenforceable if ARC obtained a favorable ruling from the arbitrator under the Old Agreement. Nowhere in the New Agreement or in the papers transmitting the New Agreement is there any language to the effect that the New Agreement will not go into effect if the Old Agreement is terminated pursuant to the Travel Agent Commissioner program. ARC could have included a provision that the New Agreement would be unenforceable if ARC received a favorable determination from the independent arbitrator. ARC could have advised the debtor of its intention in forwarding the New Agreement. ARC could have repudiated the New Agreement upon receipt of the decision by the independent arbitrator. However, ARC did none of these things.

Under Georgia law, where construction of a contract is necessary and where construction of the contract is doubtful, the contract is to be construed most strongly against the party who drafted it. *C.A. May Marine Supply Company v. Brunswick Corporation*, 557 F.2d 1163 (5th Cir. 1977); *Float–Away Door Company v. Continental Casualty Company*, 372 F.2d 701 (5th Cir.1966), *cert. denied*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967); *Giles v. National Union Fire Insurance Company of Pittsburgh, Pa.*, 578 F.Supp. 376 (M.D.Ga.1984). O.C.G.A. § 13–2–2(5). Since the evidence does not show that the parties intended the New Agreement to be unenforceable if ARC obtained a favorable ruling from the arbitrator and since the effect of Section XXVIII here is unclear, the Court has no choice but to construe the provision most strongly against the party who drafted the contract, ARC.

Accordingly, the Court finds that the parties entered into the New Agreement on or about February 24, 1988, eight days before the filing of the Chapter 11 petition, and that the New Agreement could not be terminated by ARC pursuant to the procedures set forth in the Old Agreement.

The Court next reaches the issue of whether the debtor should be permitted to assume the New Agreement. ARC argues that the New Agreement is not assumable under 11 U.S.C. § 365(c)(2), because ARC argues that it is a contract to extend finan-

**470**

cial accommodations. 11 U.S.C. § 365(c) provides as follows:

(c) [t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if— ...

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

11 U.S.C. § 365(c).

Two bankruptcy courts have dealt with this precise issue and have reached different conclusions. The court in *Airlines Reporting Corporation v. Wills Travel Service, Inc. (In re Wills Travel Service, Inc.),* 72 B.R. 380 (Bankr.M.D.Fla.1987) found that the ARC agency reporting agreement was not a contract to extend financial accommodations within the meaning of § 365(c)(2).[2] In *In re Lockspur, Inc.,* 82 B.R. 37 (Bankr.E.D.La.1987), the court found that the ARC agency reporting agreement was an executory contract to extend financial accommodations to the debtor and that it could not be assumed by the debtor.

■ After a thorough review of the record in this case, the opinions in *Wills Travel Service* and *Lockspur* and the rationale of the exception created in § 365(c)(2), the Court agrees with *Wills Travel Service* that this particular agreement is not a contract to extend financial accommodations within the meaning of § 365(c)(2). The purpose of § 365(c)(2) is to protect a party who has made an unperformed lending commitment. The subsection makes it clear that a party to a transaction which is based on the financial strength of a debtor should not be required to extend new credit to the debtor. The agreement in the case at bar is not like a contract to lend money or extend credit, and there is no evidence that ARC directly or through air carriers ever intended to extend credit to the debtor. The Old Agreement and the New Agreement provide that the travel agent has the duty to make periodic reports on all sales made and to deposit at once monies received from sales, less commissions, in a special account on which ARC has the right to draw. The stated purpose of the contract is to facilitate the issuance of airline tickets to the public, not to extend credit.

According to Collier, § 362(b)(2) applies only to extensions of credit which are loans, debt financing or financial accommodations, and not to all contracts to extend credit. "These terms are to be strictly construed and do not extend to an ordinary contract to provide goods or services that has incidental financial accommodations or extensions of credit." 2 *Collier on Bankruptcy,* ¶ 365.05[2], at 365–44 (15th Ed. 1988). To interpret "financial accommodations" to include the ARC agency reporting agreement simply because the debtor may not make deposits from sales on time would turn every contract where the debtor owed money into a contract for financial accommodations and would "allow the exception to swallow the rule." *In re United Press International, Inc.,* 55 B.R. 63, 66 (Bankr.D.C.1985); *In re Farrell,* 79 B.R. 300, 304 (S.D. Ohio 1987).

Furthermore, while ARC contended that it had had trouble with dishonored drafts from the debtor in the past, counsel stipulated at the July 1, 1988 hearing that the debtor was not in default under either the Old Agreement or the New Agreement. There are no pre-petition claims by ARC and the debtor presented evidence that was uncontradicted that it maintains a bond in the full amount required by ARC. This was not the case in *Lockspur,* where the debtor was indebted to ARC for pre-petition claims in the amount of $68,461.81 and where the debtor had not provided ARC with the proper bond or letter of credit. The facts in the case at bar do not support the conclusion reached in *Lockspur* that

---

**2.** ARC advised the Court that the court in *Wills Travel Service* had vacated the order reported at 72 B.R. 380. The Court has been advised by the *Wills* court that the order was vacated because the debtor converted the case to a Chapter 7 case, and the substance or rationale of the holding has not been modified.

ARC was essentially extending credit to the agent.

 Having determined that the New Agreement is an executory contract which is assumable under § 365, the Court now turns to the question of whether cause has been shown to lift the stay to terminate the New Agreement and whether the debtor should be permitted to assume the New Agreement. 11 U.S.C. § 365 permits the assumption of an executory contract. Section 365(b)(1) provides that if there has been a default in an executory contract, the contract cannot be assumed unless the default is cured or adequate assurance is provided that the default will be promptly cured and unless the debtor provides adequate assurance of future performance under the contract. As mentioned previously, the parties have stipulated that there is no default under the New Agreement. Thus, technically the debtor would not be required to provide adequate assurance of future performance. However, even if there were a default, it is undisputed that the bond requested by ARC is being maintained by the debtor and thus there is adequate assurance of future performance.

ARC argues that even if the debtor is permitted to assume the New Agreement, the debtor should be required to return the traffic documents and identification plates. The Court disagrees. The right to use the traffic documents and identification plates are essential to the performance of the New Agreement. *See Wills Travel Service*, 72 B.R. at 383.

Finally, it should be emphasized that the existence of the New Agreement is material to the Court's ruling. If the only agreement between the parties was the Old Agreement, the Court would lift the stay and permit ARC to pick up the plates and traffic documents in order to complete the termination. But the New Agreement confuses the issue and introduces new rights on the part of the debtor which cannot be ignored. In permitting the debtor to assume the New Agreement, the debtor should be aware of the need to comply strictly with the terms of that New Agreement. If ARC determines that the New Agreement is not being complied with and that there is cause to terminate the New Agreement, ARC should file a motion to lift the stay and the Court will hear the matter as soon as possible.

In accordance with the above reasoning, the debtor's motion to assume the New Agreement under 11 U.S.C. § 365 is GRANTED and ARC's motion to lift stay is DENIED without prejudice to ARC to bring another motion to lift stay if the facts so warrant.