In re CHARRINGTON WORLDWIDE
ENTERPRISE, INC., d/b/a Keppie
Travel Bureau, Debtor.

AIRLINES REPORTING
CORPORATION,
Appellant,

v.

CHARRINGTON WORLDWIDE ENTER-
PRISE, INC., d/b/a Keppie Travel
Bureau, Appellee.

No. 89–603–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 2, 1990.

Robert J. Wahl, St. Petersburg, Fla., for appellant.

David L. Woodward, Clearwater, Fla., for debtor.

APPEAL FROM THE UNITED STATES
BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

KOVACHEVICH, District Judge.

ORDER ON APPEAL

This cause is before the Court on appeal from the Order on Motion for Relief from Stay or Alternatively for Adequate Protection or Alternatively Motion to Compel Assumption or Rejection of Executory Contract and Motion to Prohibit the Use of Cash Collateral entered on March 7, 1989, 98 B.R. 65, by Bankruptcy Judge Alexander L. Paskay, and on request for oral argument.

STANDARD OF APPELLATE REVIEW

Appellant is entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded to the facts.

*In re Owen,* 86 B.R. 691 (M.D.Fla.1988). Findings of fact shall not be set aside unless clearly erroneous. *Griffin v. Missouri Pacific Railway Co.,* 413 F.2d 9 (5th Cir. 1969); *In re Downtown Properties, Ltd.,* 794 F.2d 647 (11th Cir.1986); Bankruptcy Rule 8013.

## FACTS

The debtor is an independent travel agency. Appellant, Airlines Reporting Corporation (ARC), is a nationwide clearinghouse for airline tickets sold by independent travel agents. The independent travel agents are able to sell airlines tickets by entering a contract with ARC entitled "Agent Reporting Agreement" (ARC agreement). ARC's stockholders consist of most of the principal airlines in the United States.

Under the ARC agreement, ARC supplies a travel agent with blank tickets and airline identification plates. The blank tickets and airline identification plates are at all times property of the airlines and are provided to the agent in trust. The debtor then sells the tickets to consumers and deposits the funds at the end of each week in a specially designated bank account. ARC is entitled to draw drafts on the account equal to the amount of tickets sold minus commissions. Only funds collected from cash sales are deposited in the account. Credit sales are not handled through ARC.

ARC and the airline carriers are parties to a contract entitled the "Carrier Service Agreement" (CSA agreement). Under the CSA agreement, ARC is obligated to pay the carriers on the tenth day after the end of the reporting period for the tickets sold by the travel agents. ARC is also entitled to draw drafts on the agents' accounts on the tenth day after the end of the reporting period. Payment to the carriers is through electronic fund transfers. Therefore, since drafts may take several days to clear as opposed to electronic fund transfers, ARC may pay the carriers prior to receiving its funds from the agent. The debtor is not a party to the CSA agreement.

The debtor and ARC entered the standard ARC agreement on February 2, 1988.

On December 15, 1988, the debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. ARC's drafts on the debtor's account totalling $17,403.34 were dishonored. Debtor also does not have a financial guaranty bond or irrevocable letter of credit running in favor of ARC or the carriers as required by the ARC agreement.

## ISSUES

I. Whether the Bankruptcy Court erred in finding that the ARC agreement did not constitute a contract to extend financial accommodations?

II. Whether the Bankruptcy Court erred by characterizing the ARC agreement as a contract to provide goods and services?

III. Whether the Bankruptcy Court erred by holding that blank airline tickets and airline identification plates do not constitute cash collateral under 11 U.S.C. § 363?

IV. Whether the Bankruptcy Court erred in determining the traffic documents and airline identification plates were not subject to turnover to ARC?

V. Pending the debtor's assumption or rejection of the ARC agreement did the Bankruptcy Court err by permitting the debtor to operate under the ARC agreement without requiring the debtor to comply with the terms of the ARC agreement?

## DISCUSSION

Appellant does not dispute that the ARC agreement is an executory contract within the meaning of 11 U.S.C. § 365(c). However, Appellant asserts that the ARC agreement and the CSA agreement form an integrated contract and together constitute a contract to extend financial accommodations. As a contract to extend financial accommodations the ARC agreement would not be assumable pursuant to 11 U.S.C. § 365(c)(2). If the Court concludes that the ARC agreement is a contract to extend financial accommodations, the remaining issues on appeal become moot.

11 U.S.C. § 365(c) provides as follows:

The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if ...

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor.

A plain reading of this section indicates that executory contracts to make a loan or extend other debt financing or financial accommodations are not assumable. The legislative history of this section indicates § 365(c)(2) was intended to be limited to actual extension of cash or a line of credit and was not intended to be extended to contracts for goods and services with installment payments. *Matter of Wills Travel Service, Inc.*, 72 B.R. 380, 382 (Bkrtcy.M.D.Fla.1987). The purpose of § 365(c)(2) is to protect a party who has made an unperformed lending commitment. *In Re Travel Shoppe, Inc.*, 88 B.R. 466 (Bkrtcy.N.D.Ga.1988). Collier states "these terms are to be strictly construed and do not extend to an ordinary contract to provide goods for services that have incidental financial accommodations or extensions of credit." 2 *Collier on Bankruptcy*, paragraph 365.05[2], at 365–44 (15th ed. 1988).

Under the CSA Agreement, Appellant is obligated to advance its own funds to the carriers in payment for the tickets sold by the travel agent provided the ticket sale was a cash transaction and the draft written on the travel agent's account was either late in being credited to ARC's account or the draft was dishonored. Appellant asserts that the ARC and CSA agreements are integrated. Therefore, even though the debtor is not a party to the CSA agreement, Appellant asserts that because ARC must under some circumstances advance its own funds on account of obligations incurred by the debtor to the carriers, the ARC Agreement is a contract to extend financial accommodations and is not assumable under § 365(c)(2).

The Court finds that the primary purpose of the ARC agreement is to facilitate the sale of airline tickets to the public. *See In Re Ambassador Travel, Inc.*, 98 B.R. 1018, 1021 (Bkrtcy.S.D.Fla.1989); *In Re the Travel Shoppe, Inc.*, 88 B.R. 466, 470 (Bkrtcy.N.D.Ga.1988); *In Re Karsh Travel, Inc.*, 87 B.R. 110, 111 (Bkrtcy.N.D.Cal. 1988). The extension of credit that may occur due to delay in clearing a draft drawn on an agent's account is incidental to the contract's overall purpose of facilitating the sale of airline tickets. Therefore, the Court finds that the ARC agreement is not a contract to extend financial accommodations to the debtor and is assumable under 11 U.S.C. § 365(a).

■ Alternatively Appellant asserts that blank airline tickets and identification plates are cash equivalents and therefore constitute cash collateral. Appellant seeks an order prohibiting Debtor from using the blank airline tickets pursuant to 11 U.S.C. § 363(c)(2). Cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents...." 11 U.S.C. § 363(a). A cash equivalent is paper that circulates throughout the commercial world and is used as a substitute for cash in commercial transactions. *See National Newark Bank & Essex Bank v. Giordano*, 111 N.J.Super. 347, 268 A.2d 327 (1970); *Pennsylvania v. Curtiss Nat'l Bank*, 427 F.2d 395 (5th Cir.1970).

Airline tickets are non-transferable and sometimes non-refundable. They do not circulate throughout the commercial world nor are they used for cash in commercial transactions. The Court finds that airline tickets are not cash equivalents. Therefore blank airline tickets and plates are not cash collateral, and 11 U.S.C. § 363 is inapplicable.

■ Appellant further asserts that the blank tickets and airplane identification plates are subject to turnover because they are not property of the estate pursuant to 11 U.S.C. § 541(d). 11 U.S.C. § 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only le-

gal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The record shows that Appellant and the carriers retained ownership or legal title to the blank airline tickets and the identification plates which were entrusted to Debtor. The Court finds that Debtor had an equitable interest consisting of possession and use of the documents and plates. Since Debtor had an equitable interest and held no legal title, 11 U.S.C. § 541(d) is inapplicable.

■ Finally, the record shows that under the ARC agreement, Debtor was required to maintain an indemnity bond or irrevocable letter of credit valued at $53,000. In order to provide adequate protection during the seven day period preceding the Debtor's assumption or rejection of the ARC agreement, the Bankruptcy Court ordered Debtor to post a bond in favor of ARC in a minimum amount of $50,000. Since ARC considered itself protected by a $53,000 bond, this Court cannot find the adequate protection fashioned by the Bankruptcy Court erroneous.

This Court, having carefully considered the issues on appeal, concludes that the Bankruptcy Court did not err. The Court finds it unnecessary to the disposition of this appeal to address issues II and V. Issue II is irrelevant, and issue V is moot. Accordingly, it is

ORDERED that the order on motion for relief from stay or alternatively for adequate protection or alternatively motion to compel assumption or rejection of executory contract and motion to prohibit the use of cash collateral filed March 7, 1989, be AFFIRMED. The Clerk of the Court is directed to enter judgment in accordance with this Order. The request for oral argument is DENIED.

DONE and ORDERED.