**In re SKYLARK TRAVEL, INC. Debtor.**

**No. 90-B-20814.**

United States Bankruptcy Court, S.D. New York.

Oct. 25, 1990.

Charles H. Scupp, Forest Hills, N.Y., for debtor.

Gilbride, Tusa, Last & Spellane, New York City, for ARC.

DECISION ON ORDER TO SHOW CAUSE FOR AN ORDER PERMITTING DEBTOR TO ASSUME EXECUTORY CONTRACT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor, Skylark Travel, Inc., has moved pursuant to 11 U.S.C.

§ 365 to assume the Agent Reporting Agreement between itself and Airline Reporting Corporation ("ARC") and for certain affirmative relief as follows: (1) restraining ARC from requiring any additional bond or letter of credit greater than the $15,000.00 letter of credit previously furnished to ARC; and (2) compelling ARC to issue blank airline tickets to the debtor pursuant to the terms of the agreement between the parties. The debtor further contends that ARC is merely an agent for various member airlines which it represents and that ARC is not a creditor because the debtor's obligations are directly to the airlines and not to ARC.

ARC maintains that it is a creditor of the debtor and that the Agent Reporting Agreement between the debtor and ARC may not be assumed because the debtor is in default and has not offered to cure the contract defaults.

## FINDINGS OF FACT

1. On August 20, 1990, the debtor filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. Since the filing of the Chapter 11 petition, the debtor has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is a licensed travel agent.

3. ARC is an organization which has entered into carrier service agreements with various airlines for the operation of a program through which ARC supplies travel documents, such as blank, standard form airline tickets and other documents to travel agents for issuance of airline tickets, tour packages, surface transportation, and hotel accommodations. The travel agents report and remit the proceeds to ARC of all such sales weekly, thereby facilitating the use of air transportation by the traveling public.

4. The debtor was approved by ARC as a travel agent and entered into an Agent Reporting Agreement (the "Agreement") with ARC, the most recent of which was effective as of November 6, 1989.

5. Pursuant to the Agreement, blank tickets were supplied by ARC to the debtor and certain airlines provided the debtor with identification plates for use in the issuance and validation of tickets for air transportation and ancillary services.

6. The Agreement provides that the traffic documents delivered to the debtor by ARC are to be held in trust for ARC and that the identification plates remain the property of the airlines, which are to be surrendered by the debtor to ARC with the traffic documents upon demand by ARC.

7. The Agreement also requires the debtor to maintain a bond or letter of credit with ARC in an amount determined pursuant to a formula stated in the Agreement in order to provide protection to ARC against defaults in payment by the debtor.

8. The Agreement further requires the debtor to report all sales of transportation and ancillary services to a designed area bank once each week. On the tenth day after the end of the reporting period, a draft is drawn to ARC on the debtor's account to cover the amount of cash sales, less applicable commissions.

9. The Agreement provides that if the debtor fails to include all sales in its sales report and then fails to account for and pay for the unreported sales on demand, ARC is entitled to remove its blank tickets and airline identification plates.

10. Additionally, it is provided in the Agreement between the parties that if the debtor fails to make full payment of all amounts owed the carriers within 30 days of ARC's notice to the debtor, the Agreement will terminate unless partial payment is made and ARC, in its discretion, extends the termination date or the carriers transfer the indebtedness to their own books.

11. Skylark failed to report a substantial quantity of sales to ARC and failed to make payment for the unreported sales or to surrender the blank ticket stock and airplane identification plates. Skylark has neither entered into a payment arrangement with ARC to extend the time for payment nor converted the indebtedness from ARC to the airlines.

12. Pursuant to the Agreement, ARC conducted an audit of the debtor's sales of air transportation. ARC discovered that the debtor failed to report and remit at least $20,344.37 for sales which the debtor made. ARC's auditor demanded that the debtor either provide a certified check for the unreported sales, or, in the alternative, that the debtor surrender the blank ticket stock and the airline identification plates. The auditor's demand was refused.

13. On July 25, 1990, ARC sent a written notice to the debtor by Federal Express, repeating its demand for payment and the immediate surrender of the traffic documents and airline identification plates.

14. On August 15, 1990, the arbitrator sustained ARC's claim and directed the debtor to cease and desist all use of the traffic documents and airline plates. The debtor was directed by the Arbitrator to surrender all stock and plates in its possession until such time as all other contractual requirements for their return had been met.

15. The debtor refused to comply with the decision of the arbitrator and four days prior to the termination of the Agreement, the debtor filed with this court its petition for Chapter 11 relief.

16. The debtor had previously provided a $15,000.00 letter of credit to protect ARC in accordance with the terms of the Agreement. The letter of credit was drawn on the First of America Bank.

17. On September 6, 1990, several weeks after the debtor filed its Chapter 11 petition, ARC drew upon the letter of credit which was issued by the First of America Bank.

18. ARC's employee, Nathan Freeman, testified that according to his records, the debtor incurred an additional post-petition debt with the result that the total debt amounted to over $40,000.00, which after the application of the $15,000.00 letter of credit, left a deficiency of $25,912.00.

19. The debtor's principal officer, Rose Robbins, testified that she could only obtain blank airline tickets from ARC and that if the debtor is unable to assume the ARC contract, it will not be able to continue as a travel agent. Although she dealt directly with one airline regarding negotiations for the direct payment of approximately $5,000.00, there was no specific sum offered to cure the unreported sales to ARC.

## DISCUSSION

■ The initial argument advanced by the debtor that ARC is not a creditor is unpersuasive because under the Agreement with the debtor, ARC is "obligated to advance its own funds to the carriers in payment for the tickets sold by the travel agent provided the ticket sale was a cash transaction and the draft written on the travel agent's account was either late in being credited to ARC's account or the draft was dishonored." *Airlines Reporting Corp. v. Charrington Worldwide Enterprise, Inc. (In re Charrington Worldwide Enterprise, Inc.)*, 110 B.R. 973, 975 (D.M.D.Fla.1990).

■ The second point raised by the debtor that ARC violated the automatic stay imposed under 11 U.S.C. § 362(a) when it redeemed the letter of credit posted by the debtor is also without weight because when a bank honors a letter of credit it pays the beneficiary with its own funds and not with assets belonging to the debtor who caused the letter of credit to be issued. *American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F.2d 293, 296 (11th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *In re M.J. Sales & Distributing Co., Inc.*, 25 B.R. 608, 614 (Bankr.S.D.N.Y.1982).

■ ARC contends that its Agreement with the debtor is not assumable under 11 U.S.C. § 365 because it is a contract to extend debt financing or financial accommodations as proscribed under 11 U.S.C. § 365(c)(2), as held in *In re Lockspur, Inc.*, 82 B.R. 37 (Bankr.Ed.La.1988). However, the weight of authority and the better reasoned cases have rejected this position and have concluded that the ARC Agreement is not properly regarded as a contract to extend financing to the debtor and is, instead,

an assumable executory contract to facilitate the sale of airline tickets. *Airlines Reporting Corp. v. Charrington Worldwide Enterprise, Inc. (In re Charrington Worldwide Enterprise, Inc.)*, 110 B.R. at 975; *In re Ambassador Travel, Inc.*, 98 B.R. 1018 (Bankr.S.D.Fla.1989); *In re The Travel Shoppe, Inc.*, 88 B.R. 466 (Bankr.N.D.Ga.1988); *Karsh Travel, Inc. v. Karsh Airlines Reporting Corp. (In re Karsh Travel, Inc.*, 87 B.R. 110 (Bankr.N.D.Cal.1988), *aff'd,* 102 B.R. 778 (N.D.Cal.1989); *Airlines Reporting Corp. v. Wills Travel Service, Inc. (In the Matter of Wills Travel Service, Inc.)*, 72 B.R. 380 (Bankr.M.D.Fla.1987).

Unlike the facts in *In re Charrington Worldwide Enterprise, Inc.*, 110 B.R. at 976, where ARC held a $53,000.00 bond which was adequate protection pending assumption of the contract, there is no bond or letter of credit now available to ARC. Moreover, unlike the facts in *In re Ambassador Travel, Inc.*, where neither party moved for assumption of the contract and ARC was adequately protected by an order giving it a super priority lien on $324,000.00 in the debtor's bank account, ARC has no such lien in this case and the debtor specifically moved for an order permitting it to assume the contract pursuant to 11 U.S.C. § 365. 98 B.R. at 1021. The case of *The Travel Shoppe, Inc.*, is not in point because there the debtor was not in default under the contract and the bond posted by the debtor was adequate protection for the debtor's performance. 88 B.R. at 470. *In re Wills Travel Service, Inc.*, is similarly not applicable because the court found that there were genuine disputed issues as to whether or not the contract was terminated, which barred ARC's summary judgment motion for a turn over of the airline identification plates. 72 B.R. at 383.

The instant case more closely resembles the facts in *In re Karsh Travel, Inc.*, where the debtor sought an injunction and an order permitting it to assume its contract with ARC despite a default due to the return of its check for insufficient funds. 87 B.R. 110. However, there was no evidence that the bond which the debtor posted with ARC was insufficient to protect ARC from future losses. Id. at 110.

■ In the instant case, there no longer is any bond available to protect ARC against future losses and the debtor is in default under the Agreement to the extent of $25,912.00. If the debtor wishes to assume the ARC Agreement it must first cure the default as required by 11 U.S.C. § 365(b) and compensate ARC for the loss of interest on the past-due amounts, at the contract rate for late payments. The debtor must also post a bond or letter of credit in the sum of $15,000.00 to replace the letter of credit which ARC redeemed. In the event that the debtor fails to cure the defaults as specified by December 30, 1990, the automatic stay will be modified and ARC will be permitted to terminate the Agreement and take possession of the blank stock and airline identification plates.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (G).

2. The Agreement between the debtor and ARC is an assumable executory contract. The debtor may assume such contract by December 30, 1990 if it cures the default, which currently amounts to $25,912.00, together with interest at the contract rate and replaces the $15,000.00 letter of credit which the debtor was required to maintain under the contract.

3. If the debtor fails to assume the Agreement with ARC by December 30, 1990 and cures the default as required, including the posting of a $15,000.00 letter of credit with ARC, the automatic stay will be modified so that ARC may terminate the Agreement and take possession of the blank stock and the airline identification plates.

SETTLE ORDER on notice.