In re AMBASSADOR TRAVEL, INC., a Florida corporation, Debtor.

**Bankruptcy No. 89–00177–BKC–SMW.**

United States Bankruptcy Court,
S.D. Florida.

April 18, 1989.

---

Marte V. Singerman, Miami, Fla., for debtor.

Harold D. Moorefield, Stearns, Weaver, Weissler, Alhadeff and Sitterson, P.A., Miami, Fla., for Airline Reporting Corp.

Joel Tabas, Miami, Fla., for Ocean Bank.

Peter Levitt, Steel, Hector and Davis, Miami, Fla., for Federated Dept. Stores.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO ARC'S MOTION FOR STAY RELIEF

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on for hearing on March 9, 1989, upon the Airline Reporting Corporation's (hereafter "ARC") Motion for Relief From Stay or, Alternatively, for Adequate Protection. On February 6, 1989, ARC filed virtually identical stay relief motions in the administratively consolidated bankruptcy cases of AMBASSADOR TRAVEL, INC., a Florida corporation and AMBASSADOR TRAVEL, INC., a Georgia corporation (hereafter collectively referred to as "AMBASSADOR"). Both Motions sought stay relief to terminate identical contracts entered into between ARC and the Debtors and to permit ARC to recover possession of blank airline tickets and airline identification plates held by AMBASSADOR. The Court having heard the testimony of three (3) witnesses, examined the evidence presented, observed the candor and demeanor of the witnesses, considered arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

AMBASSADOR operates numerous travel agencies throughout the United States. It first established its business in 1969 and since that time each Debtor has been a party to an executory contract with ARC pursuant to which ARC supplies AMBASSADOR with blank ticket stock and airline identification plates that enable AMBASSADOR to write airline tickets for its customers. AMBASSADOR pays ARC by providing it with weekly sales reports and drafts enabling ARC to draw upon AMBASSADOR's bank account for the funds due to ARC.

AMBASSADOR filed its Petitions for Relief under Chapter 11 on January 13, 1989. Since the filing of the Petitions, ARC has not supplied AMBASSADOR with any additional ticket stock. AMBASSADOR managed to continue its business through the use of its existing ticket stock, but was rapidly reaching the point where it could no longer continue in business without additional blank tickets. As of the date of the hearing, AMBASSADOR was current in all of its post-petition obligations to ARC.

On February 28, 1989, prior to the hearing on the Motions for Relief From Stay, this Court heard ARC's Emergency Motion to Require Debtor to Segregate Proceeds From Sale of the Traffic Documents, etc. At that hearing, the parties and AMBASSADOR's lender, Ocean Bank, agreed that ARC would have a first super priority lien upon the proceeds from the sales of the ticket stock.

At the hearing, the Debtor's testimony proved that the average balance on AMBASSADOR's DIP accounts was approximately $590,000.00. Approximately fifty-five percent (55%) of the monies in the account at any time were the proceeds from the sale of the tickets stock so ARC's lien on any given date amounted to approximately $324,000.00. The testimony also established that AMBASSADOR's ticket sales for any given week were generally $225,000.00 or less.

Furthermore, the expert testimony proved that ARC's Agent Reporting Agreement, upon which ARC's Motions were based, was a standard agreement which must be signed by any travel agency throughout the United States who wishes to do business with ARC. Expert testimony also established that it would be very difficult, if not impossible, for a full-service travel agency to do business if it did not enter into this Agreement with ARC and that a full-service travel agency could not survive without a continuing flow of ticket stock. The evidence also established that

AMBASSADOR could not survive or reorganize if ARC's Motions were granted.

When AMBASSADOR reports to ARC on the use of the tickets stock, AMBASSADOR supplies ARC with a copy of every ticket written. In this way, ARC can trace the whereabouts of each ticket that is written by AMBASSADOR and determine the amount of funds to be remitted to ARC for each ticket. All these reports to ARC have been timely filed post-petition.

The ARC Agency Agreement, sections XI(a) and XI(d) provide as follows:

(a) [S]uch airline identification plate shall remain the property of the carrier, and shall be returned upon to it upon demand or upon the termination of this Agreement as between the Agent and the Carrier.

(d) All ARC's traffic documents supplied to the Agent shall be held in trust for ARC by the Agent until issued to the Agent's clients to cover transportation or ancillary services purchased, or until otherwise satisfactorily accounted for to ARC or the Carrier, and shall be surrendered upon demand, together with all airline identification plates, to ARC pursuant to this Agreement.

■ ARC argues that the Agency Agreement is a non-assumable executory contract because it is a contract to extend financial accommodations within the meaning of section 365(c)(2). ARC further argues that even if the Agency Agreement is an assumable executory contract, the Debtors cannot cure the existing defaults so their right to do so should be ignored. ARC also argues that the ticket stock and airline identification plates are trust property belonging to ARC, not property of the estate and that such property must be returned to ARC. Lastly, ARC asserts that the Debtors have not and cannot provide adequate protection of ARC's interest in the tickets stock and the airline identification plates.

The Court is not persuaded by any of ARC's arguments. At the time of the hearing, there existed four (4) reported opinions which considered the issue of whether ARC's Agency Agreement was an executory contract or a financial accommodation. These cases are *Matter of Wills Travel Service, Inc.*, 72 B.R. 380 (Bankr.M. D.Fla.1987);[1] *Matter of Lockspur, Inc.*, 82 B.R. 37 (Bankr.E.D.La.1987); *In re Karsh Travel, Inc.*, 87 B.R. 110 (Bankr.N.D.Cal. 1988); and *In re The Travel Shoppe, Inc.*, 88 B.R. 466 (Bankr.N.D.Ga.1988). ARC filed with the Court two unpublished opinions regarding the same issue as part of its Memorandum of Law. They are in *In re C.I.F. Travel & Tours Corp.*, Case No. 3–88–04030–TC filed in the United States Bankruptcy Court for the Northern District of California and *In re Ambassador Travel, Inc.*, Case No. 88–09346–H2–11 filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Of these decisions, all the reported decisions with the exceptions of *Matter of Lockspur, Inc.*, hold that the ARC Agency Agreement is an executory contract which may be assumed, not a contract to extend financial accommodations within the meaning of section 365(c)(2).

The purpose of the ARC Agreement is to provide a central agency for the issuance of airlines tickets to the public, not to provide credit to travel agencies. This Court agrees with the reasoning of the majority of the reported opinions that to extend the parameters of section 365(b)(2) of the Code to include ARC's Agency Reporting Agreement would be an impermissible extension of the purpose of that section. Section 365(b)(2) does not apply to all contracts to extend credit. Collier states "these terms are to be strictly construed and do not extend to an ordinary contract to provide goods for services that have incidental financial accommodations or extensions of credit. 2 *Collier on Bankruptcy*, paragraph 365.05[2], at 365–44 (15th ed. 1988). Furthermore, *In re Karsh Travel*, held that airline tickets are ordinary goods. ARC's Agency Reporting Agreement is not

---

1. While *Wills Travel* was vacated, this Court agrees with the *Karsh* court that the analysis in that case still stands since the vocation resulted from the need to correct technicalities and notes that ARC has a powerful incentive to limit adverse precedent.

a contract for financial accommodations since the subject of the contract is the sale of airline tickets/goods, not financing.

■ The Court is also not persuaded by ARC's argument that even if the Agency Agreement is an assumable executory contract, ARC should be entitled to custody of the ticket stock and airline identification plates since the Debtors cannot cure the existing defaults or provide adequate assurance for future performance. Pursuant to 11 U.S.C. section 365 the Debtor has until Confirmation of its Plan of Reorganization to assume or reject all executory contracts, unless the other party requests and receives an order setting a definite time for assumption. ARC has not so moved. The purpose of this provision is to allow the *Debtor* to determine when to assume or reject a particular contract. Until such time as the contract is rejected, it is in effect. The real issue here is whether the Debtor has an obligation to provide ARC with adequate protection for use of the ticket stock pursuant to 11 U.S.C. section 365(e) until assumption or rejection. Assuming that the Debtors do have such an obligation, that obligation is met. ARC has a first super-priority lien on the proceeds of the sales of its ticket stock. The testimony showed that on the average the funds in the Debtors' bank accounts which were subject to this lien were $324,000.00 while the weekly debt to ARC was $225,-000.00 or less. Furthermore, the Debtor accounts for every used tickets in its reports to ARC. This practice insures that any fears ARC may have that the tickets are being misused is groundless.

ARC's assertion that the blank ticket stock and airline identification plates are trust property belonging to ARC, not property of the estate, also fails to convince the Court that these items must be returned to ARC. The Court is convinced that the proceeds from the sales of the ticket stock were not held pursuant to a valid trust. At best, the blank ticket stock and the airline identification plates were merely consigned by ARC to the Debtors. ARC has taken no steps to properly perfect its alleged right; its claims of ownership to this property are not supported by the facts.

Even if this Court were to find that the blank ticket stock and the airline identification plates were not property of the estate, it still would not allow ARC to repossess these items. It is clear from the testimony and is confirmed by *Matter of Wills*, 72 B.R. at 383; and *In re The Travel Shoppe*, 88 B.R. at 471, that the use of the blank ticket stock and airline identification plates is indispensable to a travel agency's business. *Matter of Wills* held that the airline identification plates were not property of the estate pursuant to the reporting agreement and stated that since these items were essential to the performance of the contract, that the debtor would not be compel to surrender these to ARC. That court did not rule on whether the blank airline tickets were property of the estate, but it held that this was immaterial since they could not be used effectively without the airline identification plates.

ARC's argument that the Debtors cannot provide adequate protection for ARC's interest in the blank ticket stock and the airline identification plates is not based on the facts. ARC argues that since the tickets can be written in any amount by the travel agent, ARC has no control over the total amount of its liability to perform under the written tickets so it has the right to require the Debtors to post a new bond in an amount equal to its average weekly ticket sales.

The Debtor does not need to post such a bond. The first super-priority lien which was provided to ARC via the Agreement with Ocean Bank, provides ARC with sufficient adequate protection. ARC claims that since it takes approximately three (3) weeks from the date of reporting to the collection period for any week of sales that the Debtors could have an accrued obligation to ARC in excess of $600,000.00 at any one time. ARC fails to take into account that there are additional monies in transit to AMBASSADOR resulting from the sales of ARC's tickets during any such three week period. Choosing one day and assuming that the monies in the Debtors'

account on that day comprise the full amount of ARC's first, super priority lien is misleading and incorrect.

There is no need for any adequate protection with regard to the ticket stock which was held by the Debtor's upon the date of filing since the majority of that ticket stock has been used and the proceeds therefrom have been remitted to ARC in the normal fashion provided for under the Agency Reporting Agreement.

As a final note, this Court is persuaded by the reasoning in *In re Karsh Travel, Inc.*, 87 B.R. at 1111. That court raises the policy question of who should be in control of travel agency bankruptcies. The ARC's Agency Reporting Contract must be signed by any travel agency in the United States to do business with ARC. A full service travel agency must contract with ARC. Accordingly, if this Court were to agree with ARC that the agreement is not assumable and that the blank ticket stock and the airline identification plates should be returned to ARC, ARC could, at its discretion, control practically any bankruptcy of a travel agency in the United States. This

would usurp the power of this and every court in the United States and was not part of Congressional intent in enacting the current Bankruptcy Code.

The Court adopts the reasoning and holdings of *Matter of Wills, In re Karsh, and In re The Travel Shoppe*, that hold that the ARC Agency Reporting Agreement is an assumable executory contract. It further finds that the ticket stock and airline identification plates are not trust property which must be returned to ARC and ARC is not entitled to any additional adequate protection. Therefore, the Court finds that ARC's Motions for Relief From Stay or, Alternatively, for Adequate Protection are denied.

A separate Final Judgment of even date has been entered in conformity herewith.