**In re AIR CONDITIONING, INC. OF STUART, Debtor.**

**AMERICAN BANK OF MARTIN COUNTY, Douglass E. Wendel, Trustee, Plaintiffs–Appellees,**

v.

**LEASING SERVICE CORPORATION, Defendant–Appellant.**

No. 87–5223.

United States Court of Appeals, Eleventh Circuit.

May 17, 1988.

James E. Foster, Foster & Kelly, Orlando, Fla., for defendant-appellant.

Samuel S. Sorota, North Miami Beach, Fla., for American Bank.

John Gundlach, Ackerman, Bakst, Gundlach, Lauer & Zwickle, P.A., Leslie Gern Cloyd, West Palm Beach, Fla., for Wendel.

Before VANCE and ANDERSON, Circuit Judges, and BROWN *, Senior Circuit Judge.

VANCE, Circuit Judge:

This bankruptcy appeal involves an undersecured creditor's attempt to obtain the proceeds of a $20,000 certificate of deposit used to secure a letter of credit issued in favor of the creditor. Both the bankruptcy court and the district court held that there had been a preference, and the district court ordered the creditor to deliver the

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

payment made pursuant to the letter of credit to the trustee. Except as to an award of attorneys' fees, we affirm.

## I.

In December 1982 Leasing Service Corporation (LSC) leased a computer system to Air Conditioning, Incorporated of Stuart (ACI). To secure its performance under the lease, ACI granted LSC a security interest in everything ACI owned.[1] ACI defaulted in February 1984, and in April LSC instituted replevin actions against ACI in Florida state court.

During June the parties negotiated a solution to the problem so that ACI could remain in business. They reached an agreement whereby LSC agreed not to exercise its right to seize ACI's property. On June 11 ACI agreed in a joint stipulation to furnish a $20,000 bond within four days. If it failed to furnish the bond, LSC would seize all of ACI's assets as provided in the supplemental writ of replevin LSC had previously obtained. In either event, the agreement provided that LSC would replevin the computer equipment. On June 19, the parties agreed to a new joint stipulation which stated that ACI's obligation to furnish the bond had been met by the terms and provisions of a June 15, 1984 letter of credit issued by American Bank in LSC's favor. In return for the letter of credit ACI had executed a promissory note payable to American Bank in the amount of $20,030.15. ACI had secured the note with a security interest in a $20,000 certificate of deposit.

As a result of these transactions, LSC allowed ACI to stay open for business. ACI's reprieve, however, only lasted a month. On July 25, 1984 ACI filed a petition under Chapter 11. On September 14 the bankruptcy court granted LSC's motion for relief from the stay to allow LSC to obtain a judgment for possession and judicial sale of the computer equipment. On October 4 the bankruptcy court lifted the automatic stay further to permit LSC to proceed against ACI's other assets as described in the supplemental writ of replevin. LSC claims it never located any assets of ACI other than the computer system. In November 1984 the case was converted to a Chapter 7 liquidation proceeding.

On May 23, 1985 LSC demanded that American Bank honor the letter of credit. American Bank responded by filing a complaint in the bankruptcy court, alleging that LSC was violating the automatic stay. The trustee filed an intervention complaint. The bankruptcy court, without a trial, nullified the letter of credit, ordered American Bank to surrender the certificate of deposit to the trustee, and awarded American Bank attorneys' fees and costs associated with the original complaint.[2] The district court reversed the bankruptcy court's nullification of the letter of credit, but affirmed the bankruptcy court's finding of a preference in favor of LSC. 72 B.R. 657. The district court ruled that the trustee could attack the preference under 11 U.S.C. § 550(a). LSC now appeals the district court's order.

## II.

### A.

LSC's primary argument on appeal is that the district court and the bankruptcy court erred by ruling that the trustee had proved all five elements of a preferential transfer under 11 U.S.C. § 547(b). That subsection allows the trustee to avoid any transfer of property of the debtor:

(1) to or for the benefit of a creditor;

---

1. A supplemental writ of replevin LSC later obtained pursuant to this security interest ordered ACI to deliver to LSC: "All goods, chattels, fixtures, furniture, equipment, assets and property of any kind whatever located now and hereafter belonging to Air Conditioning, Inc. of Stuart and in which Air Conditioning, Inc. of Stuart has any interest."

2. American Bank had filed an interpleader action previously in Florida state court. This action apparently was dismissed voluntarily because an interpleader action is improper in letter of credit situations like this one. *See Dallas Bank & Trust Co. v. Community Dev. Corp.,* 686 S.W.2d 226, 230–31 (Tex.Ct.App.1985). American Bank recovered the fees and expenses associated with this aborted state court interpleader action. We reverse this award.

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

.        .        .        .        .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The trustee may recover any property transferred in violation of section 547(b) from "the initial transferee of such transfer or the entity for whose benefit such transfer was made...." *Id.* § 550(a)(1). LSC argues that the trustee failed to prove elements (1) and (5) under section 547(b), and that the district court erroneously granted relief under section 550(a).

Initially LSC argues that there has been no preferential transfer because the letter of credit issued by American Bank is not "an interest of the debtor in property," as required by the first sentence of section 547(b). Waving a banner acclaiming the inviolability of letters of credit, LSC argues that section 547(b) cannot apply in this case.

■ We agree with LSC that neither a letter of credit nor its proceeds are property of the debtor's estate. *See In re AOV Indus., Inc.,* 64 B.R. 933, 941 (Bankr.D.D. C.1986); *In re Clothes, Inc.,* 35 B.R. 487, 489 (Bankr.D.N.D.1983). As the district court correctly noted, a letter of credit is an undertaking between the issuing bank and the beneficiary, and is independent of the relationship between the bank and the account party. *In re Air Conditioning, Inc. of Stuart,* 72 B.R. 657, 660 (S.D.Fla.

1987); *see Pro–Fab, Inc. v. Vipa, Inc.,* 772 F.2d 847, 852–53 (11th Cir.1985).

■ Collateral which has been pledged by the debtor as security for a letter of credit, however, is property of the debtor's estate. *In re Compton Corp.,* 831 F.2d 586, 590 (5th Cir.1987). It was the transfer of the $20,000 by the debtor ACI to American Bank as collateral for the letter of credit that constituted the preferential transfer under section 547(b). As the Fifth Circuit recently held: "When a debtor pledges its assets to secure a letter of credit, a transfer of debtor's property has occurred under the provisions of 11 U.S.C. § 547." *Compton,* 831 F.2d at 590. Thus there was a transfer of ACI's property, and section 547(b) applies in this case.

■ Turning to the disputed elements of section 547(b), LSC contends first that the transfer of the $20,000 was not "to or for the benefit" of LSC. *See* 11 U.S.C. § 547(b)(1). Instead, LSC maintains that the transfer of the $20,000 to purchase the certificate of deposit was solely and exclusively for the benefit of the bank.

The Fifth Circuit's recent *Compton* opinion contains an excellent, scholarly discussion of this issue. It held that a creditor can receive an indirect benefit in the letter of credit context sufficient to meet the requirement of section 547(b)(1). *See* 831 F.2d at 591–95. We agree that an indirect transfer arising from a debtor's pledge of security to a third party bank "may constitute a voidable preference as to the creditor who indirectly benefitted from the direct transfer to the third party." *Id.* at 591–92. The district court in this case correctly held that "although the transfer of the certificate of deposit (the debtor's property) was made to American Bank it was clearly 'for the benefit' of LSC because it indirectly secured payment of an undersecured antecedent debt owed by ACI." 72 B.R. at 661. In addition the promised transfer of the certificate of deposit induced American Bank to issue the letter of credit in the first place. We hold therefore that LSC did receive a benefit under sec-

tion 547(b)(1).[3]

LSC contends next that the transfer did not enable LSC to receive more than it would have received in a Chapter 7 liquidation had the transfer not been made. *See* 11 U.S.C. § 547(b)(5). LSC argues that the trustee failed to present any evidence that ACI's assets were insufficient to satisfy fully LSC's claims. LSC complains that the bankruptcy court did not allow LSC the opportunity to show that ACI may have had assets in which LSC had a valid security interest.

■ The trustee responds that the bankruptcy court determined that section 547(b)(5) was satisfied on the basis of the bankruptcy schedules which showed LSC was grossly undersecured.[4] The trustee correctly points out that he asked the bankruptcy court to take judicial notice of the schedules, and that LSC did not object.[5] In its memorandum decision, the bankruptcy court stated that "the essential facts appear from undisputed documents or are otherwise admitted...." LSC again made no motion or objection to this statement in the bankruptcy court. LSC did not protest the bankruptcy court's reliance on the schedules until LSC was before the district court on appeal, where LSC complained in its brief that although the bankruptcy court "did take judicial notice of the Bankruptcy schedules ... that is not evidence nor is it binding on LSC." This protest,

however, was too late, and because LSC failed to object to the schedules at the trial level in the bankruptcy court, the schedules are indeed binding on LSC. *Cf. In re Shults*, 28 B.R. 395, 396 (Bankr. 9th Cir. 1983) (debtors impliedly consented to trial of creditor's claims for relief as presented through failure to object).

On the basis of these schedules, the bankruptcy court found that because the unsecured claims on the debtor's estate could not be satisfied in full, the transfer at issue gave LSC more than it would have received in a Chapter 7 liquidation without the transfer. The trustee therefore met his burden under section 547(b)(5).

LSC makes much of the fact that there was no hearing in the bankruptcy court. LSC argues that it is impossible to determine whether the certificate of deposit was purchased with the debtor's own funds, and now asks this court to remand the case for a hearing on the origin of the $20,000.

■ When a third party makes a loan to a debtor which enables the debtor to satisfy a creditor's claim, the proceeds of the loan do not become part of the debtor's estate. *See In re Price Chopper Supermarkets, Inc.*, 40 B.R. 816, 820 (Bankr.S.D. Cal.1984); *In re Castillo*, 39 B.R. 45, 46 (Bankr.D.Colo.1984); *In re Sun Railings, Inc.*, 5 B.R. 538, 539 (Bankr.S.D.Fla.1980). There are several possible sources from which the $20,000 could have come such

---

3. The Fifth Circuit eloquently and forcefully articulated this principle in *Compton:*

We hold that a creditor cannot secure payment of an unsecured antecedent debt through a letter of credit transaction when it could not do so through any other type of transaction. The purpose of the letter of credit transaction in this case was to secure payment of an unsecured antecedent debt for the benefit of an unsecured creditor. This is the only proper way to look at such letters of credit in the bankruptcy context. The promised transfer of pledged collateral induced the bank to issue the letter of credit in favor of the creditor. The increased security interest held by the bank clearly benefitted the creditor because the bank would not have issued the letter of credit without this security. A secured creditor was substituted for an unsecured creditor to the detriment of the other unsecured creditors.

831 F.2d at 594–95.

4. The bankruptcy court found that ACI's total debts exceeded its assets by at least $50,000. ACI's personal property, valued by ACI at $21,-711, was subject to liens of $173,470. The trustee had sold all of ACI's tangible personal property for $1,000. The court concluded that LSC was "grossly undersecured."

5. The transcript of the October 24, 1985 hearing reads:

The Court: You would ask me to take judicial notice of the schedules?

[Counsel for the Trustee]: Yes, your Honor.

The Court: The schedules will tell me what the debts are.

Counsel for LSC responded to this exchange by renewing his argument that a letter of credit cannot be property of the debtor's estate. At no time did LSC object to the introduction or use of the bankruptcy schedules.

that the transfer to the bank would not have created a preference. Once again, LSC did not initiate an inquiry into this possibly important issue.

In its brief to the district court, LSC argued that "[n]o discovery ever took place on that issue as the Bankruptcy Judge deemed it to be irrelevant." This is not, however, an accurate account of what occurred in the bankruptcy court. At the October 24, 1985 hearing, LSC raised the issue of the source of the funds used to purchase the certificate of deposit. The bankruptcy judge responded:

> I will ... allow you, for the purposes of protecting your record, to pursue discovery on that point, and I will require any person that you want answers from to give you answers that would give the entire genesis and the history of that money within reason, if that is your wish....

Thus the bankruptcy court practically *encouraged* LSC to pursue discovery on this issue. LSC simply failed to follow up.[6]

■ LSC raises some potentially meritorious contentions with respect to the source of the $20,000. LSC did not pursue these avenues, however, in the bankruptcy court. Although we will consider an issue not raised below if it involves a pure question of law and if refusal to consider it would result in a miscarriage of justice, *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir.1982), the issue in this case of the source of the $20,000 is a pure question of fact. Bankruptcy cases are to be tried in bankruptcy court. We therefore affirm the district court and the bankruptcy court and hold that the trustee proved all elements of a preferential transfer under 11 U.S.C. § 547(b).

**B.**

Despite the existence of a transfer which satisfies the five elements of section 547(b), the trustee may not avoid a transfer as a preference if the transfer was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor...." *Id.* at § 547(c)(1)(A).[7] LSC argues that its acceptance of the letter of credit and its release of its right to seize ACI's inventory and property pursuant to the supplemental writ of replevin constitute "new value" under section 547(c)(1)(A).

■ This argument overlooks the fact that whatever value LSC created by these actions was not new. As in *Compton*, the bank in this case issued the letter of credit "to secure an antecedent unsecured debt due the beneficiary of the letter of credit. The unsecured creditor beneficiary gave no new value upon the issuance of the letter of credit." *Compton*, 831 F.2d at 594. An agreement by an undersecured creditor to forego its right to foreclose on collateral cannot be treated as a new value under section 547. *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 (D.C.Cir.1986). Forbearance from exercising pre-existing rights does not constitute new value under section 547(a)(2). *See Charisma Inv. Co., N.V. v. Air Florida Sys., Inc.*, 68 B.R. 596, 600–03 (S.D.Fla.1986); *Matter of Lario*, 36 B.R. 582, 584 (Bankr.S.D.Ohio 1983); *cf. Matter of Duffy*, 3 B.R. 263, 266 (Bankr.S. D.N.Y.1980) (forbearance by lessor from repossession of rented vehicle did not enhance the value of debtor's estate and therefore did not constitute new value within § 547(c)(1) as defined by § 547(a)(2)). The letter of credit transaction therefore did not give ACI new value, and LSC cannot use section 547(c)(1) as a defense to the

---

**6.** LSC similarly argued to the district court that it had never waived its right to present evidence. This is true. It is also true, however, and more determinative of this appeal, that LSC did not pursue the opportunities it had to discover and present evidence.

**7.** The Bankruptcy Code defines "new value" as money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation. 11 U.S.C. § 547(a)(2).

trustee's avoidance of the preferential transfer under section 547(b).

### C.

 Finally LSC argues that the district court erred by allowing the trustee to recover the proceeds of the letter of credit from LSC pursuant to 11 U.S.C. § 550(a)(1) because the trustee sought relief from the bank and not LSC. LSC complains that the trustee's complaint failed to give LSC notice of the nature of the claim against it, and the remedy requested, thus depriving LSC of procedural due process.

LSC doth protest too much. Although the parties' initial pleadings were perhaps misguided, *see supra* note 2, it has been clear from the outset what this dispute is about: The $20,000 certificate of deposit. The district court, in fact, did not allow the trustee to recover the proceeds of the letter of credit (as LSC characterizes the district court's judgment). Instead, the district court correctly allowed the trustee to recover from LSC the property transferred: the certificate of deposit. The Bankruptcy Code explicitly provides for this by allowing the trustee to recover a preferential transfer from "the initial transferee of such transfer *or the entity for whose benefit such transfer was made....*" 11 U.S.C. § 550(a)(1) (emphasis added). The district court did this primarily to uphold the sanctity of letters of credit as vital instruments of commerce, the virtues of which LSC so vigorously extols. The record thoroughly presented the preference issue, and the district court did not abuse its discretion in resolving it. *See In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1380 (9th Cir.1985); *cf. In re Espino*, 806 F.2d 1001, 1002 (11th Cir.1986) (where the record reflects an issue was presented in a cursory manner and never properly presented to the bankruptcy court, the issue is not preserved for appeal).[8] We therefore affirm the district court's ruling that the trustee can recover the transfer under section 550(a).

8. LSC attempts to distinguish *Pizza of Hawaii* on the grounds that the bankruptcy court denied LSC the opportunity to develop complete a fac-

### III.

The district court's order affirming the bankruptcy court's award of attorneys' fees associated with American Bank's initial interpleader action is REVERSED. In all other respects, the district court's judgment is AFFIRMED.

tual record on the preference issue. The bankruptcy court, however, did not deny LSC this opportunity. *See supra* Part II.A.