In re THOMSON McKINNON SECURITIES INC. and Thomson McKinnon Inc., Debtors.

Bankruptcy Nos. 90 B 10914, 90 B 11805.

United States Bankruptcy Court, S.D. New York.

March 19, 1991.

Debevoise & Plimpton by Krista E. Trousdale, New York City, for debtor.

Office of Frederick C. Stern by Frederick C. Stern, New York City, for creditors.

### DECISION ON MOTION TO ALLOW REDUCED CLAIMS FOR RETURN OF CASH DEPOSIT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

At issue is whether or not the plaintiffs may look to a cash bond which the debtor posted for a stay pending the appeal of a $655,609.00 judgment obtained by the plaintiffs. The cash bond was posted by the debtor two days before it filed its Chapter 11 petition with this court under the Bankruptcy Code. The debtor argues that the plaintiffs may not obtain the cash in question because to do so would constitute a voidable preference under 11 U.S.C. § 547(b). The plaintiffs reason that their claim is an exception to the voidable preference argument and meets the statutory requirements of 11 U.S.C. § 547(c).

The parties entered into a stipulation of facts on March 14, 1991 (the "Stipulation") and seek a determination as a matter of law. Thomson McKinnon Securities Inc. ("TMSI") and Jay W. Enyart, Robert B. Gollance, Lawrence H. Lee, Lawrence Jayne, E. Jeffrey Peierls, Ethel F. Peierls and Brian E. Peierls (collectively, the "Barad Plaintiffs"), by their attorneys, submitted the Stipulation to the court at the hearing on March 14, 1991. The stipulated facts are as follows:

1. On February 12, 1990, the Barad Plaintiffs obtained a judgment against TMSI and its wholly-owned subsidiary, Realty International Corporation, in the District Court for the City and County of Denver, Colorado (the "Denver District Court") in the amount of $655,609.00 plus 8% pre-judgment simple interest from January 5, 1987 to February 12, 1990. Post-judgment simple interest on this amount accrues at the rate of 9% per annum.

2. On March 12, 1990, TMSI filed a notice of appeal from the judgment. On or about March 23, 1990, the Barad Plaintiffs filed a notice of cross-appeal from the judgment.

3. After February 28, 1990, and before March 26, 1990, the Barad Plaintiffs were free to levy on any assets of TMSI available to satisfy the judgment. On March 20, 1990, the Barad Plaintiffs obtained a Restraining Notice against TMSI from the New York Supreme Court, County of New York, prohibiting TMSI from transferring any property except pursuant to court order, until the judgment was satisfied.

4. On March 26, 1990, TMSI deposited a cashier's check with the Clerk of the Denver District Court in the amount of $942,-866.68. TMSI used its own funds for this deposit, the purpose of which was to obtain a stay of execution pending appeal. Pursuant to an order of the Denver District Court, this cash deposit stayed execution on the Barad Plaintiffs' judgment pending appeal.

5. As of March 28, 1990, the claim of the Barad Plaintiffs, including the judgment, plus pre- and post-judgment interest, was $827,294.81. As of March 26, 1990, the claim of the Barad Plaintiffs was slightly less than this amount, the difference representing two days' interest at 9%. As of March 26, 1990, TMSI had on deposit

in New York banks funds sufficient to pay the Barad Plaintiffs' claim. The Barad Plaintiffs deferred levying on TMSI's available assets in expectation of the posting of the cash deposit.

6. TMSI filed its voluntary petition in this Court on March 28, 1990.

7. TMSI was insolvent within the meaning of 11 U.S.C. § 101(31)(A) on March 26, 1990.

8. On December 19, 1990, the Denver District Court, which the parties had stipulated was to decide the appeal, affirmed the judgment in all respects.

9. The time to appeal the December 19, 1990 decision expired on February 4, 1991. Neither TMSI nor the Barad Plaintiffs filed an appeal.

## DISCUSSION

### The Cash Bond is an Avoidable Preference

■ Pursuant to 11 U.S.C. § 547(b), a trustee may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor receive payment of such debt to the extent provided by the provisions of this title.

### Transfer of Interest in Property

Section 101(54) of the Bankruptcy Code defines "transfer" broadly to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest ..." 11 U.S.C. § 101(54) (1990). There is no question that the cash bond TMSI posted to the Clerk of the Denver District Court ("the Clerk") was a "transfer" under the Bankruptcy Code.

(1) *To or for the benefit of a creditor.*

By posting the cash bond to the Clerk, Barad's interest was protected pending the Denver District Court appeal. Hence, this was an indirect benefit to Barad, the creditor. *In re Air Conditioning Inc. of Stuart,* 845 F.2d 293 (11th Cir.1988), *cert. denied,* 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988).

(2) *For or on account of an antecedent debt owed by the debtor, TMSI, before such transfer was made.*

The debt, and subsequently the judgment, TMSI owed to Barad was pre-existing since it was created by a pre-existing contract between TMSI and Barad. TMSI posted the cash bond for the judgment on March 26, 1990. This is an antecedent debt because the debt arose prior to the posting of the cash bond.

(3) *Made while the debtor, TMSI, was insolvent.*

The debtor, TMSI, is presumed insolvent within the 90 days prior to the filing of the bankruptcy petition. Since TMSI filed its petition on March 28, 1990 and the transfer occurred on March 26, 1990, TMSI is presumed insolvent within the meaning of § 101(31)(A). *See* 11 U.S.C. § 547(f). In addition, the parties, in paragraph 7 of the Stipulation, agree that the debtor was insolvent, within the meaning of U.S.C. § 101(3)(A), on March 26, 1990.

(4) *Made on or within 90 days before the date of the filing of the petition.*

Since the transfer of the cash bond was made on March 26, 1990, it was made within 90 days of the filing of the petition on March 28, 1990.

(5) *Chapter 7 v. Chapter 11.*

This is a liquidating Chapter 11 case where the unsecured creditors may receive less than full payment of their claims. Indeed, the parties in this matter do not

dispute the fact that if the plaintiffs collect the cash bond they will receive more than any possible distribution under a liquidating plan or as a distribution if this case were to be converted for liquidation under Chapter 7 of the Bankruptcy Code.

A preferential transfer is given when all five factors in § 547(b) are met. In this case, since all five factors have been met, there exists a preferential transfer of the cash bond from TMSI to the Clerk for an indirect benefit to Barad. *See In re Air Conditioning Inc. of Stuart*, 845 F.2d 293 (11th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988).

A transferee may not escape the finding of a preferential transfer under 11 U.S.C. § 547(b) except where "the transfer was intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor." *See* 11 U.S.C. § 547(c). Barad argues that the cash bond was a contemporaneous exchange for new value, contending that by forbearing to levy on the judgment it gave a new value to TMSI under § 547(c)(1)(A).

### *Exceptions—§ 547(c)*

■ Except as provided in § 547(c), the trustee may avoid a transfer of an interest of the debtor in property that satisfies the requirements of 11 U.S.C. § 547(b). Section 547(c)(1) provides as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor, and

(B) in fact a substantially contemporaneous exchange;

Barad argues that it gave new value to the debtor when it agreed to postpone the levy until the appeal was rendered from the Denver District Court, because the debtor was not deprived of the funds which were otherwise subject to execution on plaintiffs' judgment.

The term "new value" is defined in Code § 547(a)(2) as follows:

(2) "new value" means money or money's worth in goods, services, or new credit or release by a transferee of property previously transferred to such transferee in a transaction that is neither void or voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

As the 11th Circuit recognized, "[f]orbearance from exercising pre-existing rights does not constitute new value under section 547(a)(2)." *In re Air Conditioning Inc. of Stuart*, 845 F.2d 293, 298 (11th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988). Barad's forbearance from levying on the judgment did not create "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred." 11 U.S.C. § 547(a)(2). Barad's agreement to postpone its right to levy on the judgment is not "new value" under § 547(c). *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986).

Forbearance by Barad from levying on the judgment did not enhance the value of the debtor's estate. The debtors' right to appeal the judgment was not an asset for the benefit of its creditors that could reasonably offset the diminution of its estate upon the execution of the judgment. *See Matter of Duffy*, 3 B.R. 263 (Bkrtcy.S.D.N.Y.1980) (Forbearance by car lessor from repossessing rented vehicle did not enhance the value of the debtor's estate so as to constitute "new value".) Indeed, the net effect was that upon TMSI's posting of the cash bond of $942,866.68 it secured the judgment for an antecedent debt, but did not create "new value." As the *Duffy* court observed "[a]n obligation substituted for an existing obligation is expressly excluded from the definition of 'new value'." *Matter of Duffy*, 3 B.R. 263, 266 (1980).

Furthermore, the cash bond which was deposited by TMSI with the Clerk oversecured Barad because the actual debt owed on March 28, 1990 was $827,866.68 and the

cash bond deposited on March 26, 1990 was $942,866.48. "It is a basic axiom of bankruptcy law that a secured creditor is protected only to the extent of his security interest." *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 (D.C.Cir.1986). Therefore, Barad should only be protected to the extent of $827,666.68, not $942,866.68. If the effect of depositing the cash bond were treated as "new value", then upon TMSI's filing of the petition the amount available for the unsecured creditors would be substantially reduced.

> The basic concept underlying bankruptcy legislation, and of particular significance in dealing with preferences is the fundamental goal of equality of distribution. *See* House Report No. 595, 95th Cong., 1st Sess. 177, 178 (1977), U.S. Code Cong. & Admin News 1978, p. 5787.

*Matter of Duffy*, 3 B.R. 263, 266.

Giving to "forbearance" the status of "new value" in the oversecured transaction would have the same result as exempting an undersecured creditor because the "preference, provisions of the bankruptcy code would be nullified", [enabling all creditors oversecured and undersecured], "to extract payments within the preference period under that exception." *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1159 (D.C.Cir.1986).

Because no new value was created or tendered, the § 547(c) exception was not met, and Barad is not entitled to utilize the exception provisions contained in 11 U.S.C. § 547(c) to avoid the finding that the transfer would be a preferential transfer under 11 U.S.C. § 547(b). To do otherwise would undermine the concept of equality of distribution, which is a basic premise under the Bankruptcy Code.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(C) and (F).

2. If the plaintiffs were to recover the cash bond which they posted two days before the commencement of this Chapter 11 case, such recovery would constitute a voidable preference as proscribed under 11 U.S.C. § 547(b).

3. The plaintiffs' forbearance from executing on the cash bond before the debtor filed its Chapter 11 petition does not constitute new value within the meaning of 11 U.S.C. § 547(c)(1).

4. The debtor's objection to the plaintiffs' proof of claim with respect to the cash bond is granted. The claim shall be expunged to the extent of the security interest claimed in the cash fund.

SETTLE ORDER upon notice.