**In re SECURITY SERVICES, INC., Debtor.**

**SECURITY SERVICES, INC., Plaintiff,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.**

Bankruptcy No. 89–42534–2–11.
Adv. No. 90–4114–2–11.

United States Bankruptcy Court,
W.D. Missouri.

Sept. 13, 1991.

3. Since the Court finds that the IRS was not in contempt, we do not need to reach the issue of sovereign immunity.

Gene A. DeLeve, Kansas City, Mo., for Debtor.

Wayne D. Lambert, Kansas City, Mo., Michael S. Davis, Scott D. Talmage, Zalkin, Rodin & Goodman, New York City, for National Union Fire Ins. Co. of Pittsburgh, Pa.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This adversary action comes before the Court on a motion for summary judgment by the debtor in possession Security Services, Inc. ("Security Services") and cross-motion for summary judgment by the defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). It presents the issue of whether the granting of a security interest by Security Services to National Bank of North Carolina ("NCNB") in exchange for the extension of an existing letter of credit in favor of National Union is a preference recoverable from the creditor National Union. Under the facts of this case, such transfer is not a preference because the transfer was not to or for the benefit of National Union. Nor did National Union receive more by virtue of the transfer than they would have in a chapter 7 bankruptcy if the transfer had not been made. Thus the first and fifth elements of a preference under the Bankruptcy Code are not satisfied. 11 U.S.C. § 547(b)(1), (5).

## FACTS

National Union is an insurance carrier which wrote policies of insurance for Security Services. In connection with those policies, Security Services entered into various indemnity agreements with National Union whereby Security Services agreed to reimburse National Union for claims and expenses paid by National Union. To secure the indemnity agreements, National Union required Security Services to obtain a letter of credit naming National Union as beneficiary in the event of a default by Security Services on its obligations under the indemnity agreements. In 1986, Security Services arranged with NCNB to issue a letter of credit (No. 34079), which is at issue in this case, in the amount of $1,500,000.00. At the time the letter of credit was issued, NCNB did not require any collateral from Security Services. Thus, from its original issue date through various extensions to its scheduled expiration date of August 31, 1989, the letter of credit remained unsecured.

Prior to the expiration of the letter of credit an employee of AIG Risk Management ("AIGRM"), a firm employed by Na-

tional Union to monitor letters of credit, prepared a sight draft for $1,500,000.00 to NCNB dated August 31, 1989 to draw down the letter of credit. Accompanying the sight draft was a handwritten note conditioning payment of the draft on non-renewal of the letter of credit. The note requested that NCNB return the sight draft and the amendment extending the letter of credit to AIGRM in the event that the letter of credit were extended. The sight draft and the accompanying note were transmitted via Federal Express and arrived in the offices of NCNB on August 31, 1989.

Eleventh hour negotiations did result in an extension of the letter of credit to June 30, 1990. In exchange for this extension NCNB received a security interest in Security Services' freight bills and accounts receivable. The granting of the extension to the letter of credit and the granting of the security interest in return took place on August 31, 1989, and NCNB perfected its security interest with the appropriate UCC filings on September 6, 1989.

NCNB returned the sight draft to AIGRM without paying on it as requested by the handwritten note. Later, after Security Services had filed its voluntary petition for bankruptcy on November 3, 1989, National Union did draw down the entire amount of the letter of credit with drafts dated December 28, 1989 and February 14, 1990 in the amounts of $1,144,053.22 and $355,946.78.

## DISCUSSION

### A. *Section 547*

A preferential transfer of money or property to a creditor which prejudices the other creditors in a bankruptcy by leaving less in the bankruptcy estate to be divided by the other creditors is prohibited by the Bankruptcy Code and the elements of such transfer are set out in 11 U.S.C. § 547(b):

Except as provided in subsection (c) of [§ 547], the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of [11 U.S.C. § 701 et seq.];

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of [11 U.S.C. § 101 et seq.].

The two purposes of § 547(b) are to discourage creditors from attacking and dismantling a financially unstable debtor; and to force unsecured creditors to share the unencumbered assets of the debtor equally. *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (Matter of Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 227 (5th Cir.1988). Thus § 547 promotes the orderly distribution of the debtor's assets by allowing the trustee to avoid certain preferential transfers and bring the transferred property back into the bankruptcy estate.

It is well established that the transfer of a security interest in the debtor's property is a "transfer of an interest of the debtor in property" as that phrase is used in the Bankruptcy Code. *Vogel v. Russell Transfer, Inc.*, 852 F.2d 797, 798 (4th Cir.1988); *see* 11 U.S.C. § 101(50) (1988). The parties do not dispute that the transfer was "on account of an antecedent debt"; made while Security Services was insolvent; and was made within 90 days before the debtor filed for bankruptcy. The parties do dispute whether the transfer was "to or for the benefit of a creditor" and whether the transfer enabled National Union to receive

**414**

more than they would have under a chapter 7 liquidation bankruptcy if the transfer had not been made. Either one of those disputed elements would be dispositive in this case. Thus the question is, did National Union benefit from the transfer of the security interest to NCNB, or did it receive more than it would have, absent the transfer, in a Chapter 7 bankruptcy.

**B. Transfer of a Security Interest in the Debtor's Property to Secure Issuance of a Letter of Credit**

 A standby letter of credit is a three party transaction. The debtor obtains a letter of credit from a bank which names his creditor as beneficiary. If the debtor should default on the debt, the letter gives the creditor the right to demand payment from the bank. It is the "independence principle" that sets the standby letter of credit apart from a surety relationship. That is, once a proper demand has been made by the beneficiary, it is not a proper defense against payment that the creditor did not perform its end of the bargain between debtor and creditor. Thus "the bank's obligation to the beneficiary is independent of the beneficiary's performance on the underlying contract with the customer." 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–2 (3rd ed. 1988). Similarly, once the letter of credit has been issued, the bank's obligation to the beneficiary is independent of any obligation that the bank's customer has to it. *Id.*

 In the context of a bankruptcy case, it has been held that a letter of credit is not property of the bankruptcy estate under § 541. *North Shore & Central Illinois Freight Co. v. American National Bank & Trust Co. (In re North Shore & Central Illinois Freight Co.)*, 30 B.R. 377, 379 (Bkrtcy.N.D.Ill.1983). Accordingly the automatic stay does not operate to enjoin a post-petition draw down of a letter of credit. *Page v. First National Bank of Maryland (In re Page)*, 18 B.R. 713, 715 (D.D.C.1982). Nonetheless, a transfer of a security interest in property of the debtor to a bank to secure issuance of a letter of credit may, under certain circumstances, be found to be a transfer for the benefit of a creditor and consequently a voidable preference under the Bankruptcy Code.

While the Eighth Circuit has not yet spoken to this issue, two Circuit Courts of Appeal have had occasion to determine that the transfer of a security interest in property of the debtor in order to secure issuance of a letter of credit can be considered a preferential transfer. *American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc.)*, 845 F.2d 293, 296 (11th Cir.1988), *cert. denied* 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988). *Air Conditioning, Inc., Id.* and *Kellog v. Blue Quail Energy, Inc. (Matter of Compton)*, 831 F.2d 586 (5th Cir.1987), *reh'g granted on other grounds*, 835 F.2d 584 (5th Cir.1988). It is primarily upon these decisions, both of which found voidable preferences, that the plaintiff in this case relies. The plaintiff's reliance is misplaced, however, because crucial factual distinctions render those cases inapposite to the case at hand.

In *Air Conditioning, Inc.* the debtor had entered into an agreement to lease computer equipment from the creditor leasing company. The debtor defaulted on the lease payments and the creditor initiated a replevin action to repossess the computer equipment. As part of an agreement to allow the debtor to continue in possession of the computer equipment so that it could remain in business the debtor arranged for a bank to issue a letter of credit with the creditor as beneficiary. The debtor gave the bank a security interest in a $20,000 certificate of deposit to secure issuance of the letter. The 11th Circuit Court of Appeals in that case found that there had been a transfer (security interest granted to the bank by the debtor) and that the transfer benefitted the creditor. *Air Conditioning, Inc.*, 845 F.2d at 296–97. Additionally, it allowed the creditor to receive more than it would have in a Chapter 7 bankruptcy proceeding because prior to the granting of the security interest, the debt was undersecured and could not have been satisfied in full by looking to the bankrupt-

cy estate. *Air Conditioning, Inc.* 845 F.2d at 297.

In *Compton* the creditor provided a quantity of oil to the debtor. When the debtor was unable to make timely payment for the oil, it arranged for a bank to issue an irrevocable standby letter of credit in favor of the creditor so that if payment were not made by the debtor before a certain date, the creditor was entitled to draw on the letter of credit. This letter was secured by an existing security agreement already in place between the debtor and the bank which contained a future advances clause subjecting the collateral to any loans made by the bank to the debtor after the granting of the security interest. The court found that the creditor had received an indirect transfer of an interest in the debtor's property at the time the letter of credit was issued by virtue of the security interest which applied to the debtor's obligation to the bank. *Compton,* 831 F.2d at 591.[1] The transfer of the security interest and the contemporaneous issuance of the letter of credit allowed the creditor to receive full payment on the debt as opposed to the fifty cents on the dollar which they would have gotten as an unsecured creditor in the bankruptcy. *Compton,* 831 F.2d at 595 n. 12.

## C. *No Benefit to National Union*

The critical distinction between the facts in both *Air Conditioning, Inc.* and *Compton* is that in both of those cases, the granting of the security interests and contemporaneous issuance of the letters of credit caused unsecured or undersecured antecedent debts to become fully secured. *Air Conditioning, Inc.,* 845 F.2d at 296; *Compton,* 831 F.2d at 594. In that situation, there can be no doubt that the granting of the security interest has been a benefit to the creditor because prior to the issuance of the letters, and the granting of the security interests which secured the letters, the debts owed to the creditors in those cases were not fully secured. By contrast, the letter of credit at issue here was in existence, and National Union was guaranteed payment on Security Services' liability. Whether NCNB did or did not, at any given time, hold a security interest in Security Services to secure Security Services obligation to NCNB is irrelevant to the position of National Union. During the entire existence of the letter of credit, National Union's position was secured to the same extent because as long as the letter was in existence, National Union held an unqualified right to draw down $1,500,000.00 against the letter, irrespective of the relationship between Security Services and NCNB. In distinguishing other letter of credit cases, the *Compton* court observed that the case it considered "differs from these other letter of credit cases by one very important fact: the letter of credit in this case was issued to secure an antecedent unsecured debt due the beneficiary of the letter of credit." *Compton,* 831 F.2d at 594. Indeed, that difference is decisive.

That is not to say that the granting by Security Services of the security interest in freight bills and receivables to NCNB was

1. Both the *Compton* and the *Air Conditioning, Inc.* cases rely upon a legal fiction which they refer to as the "direct/indirect transfer doctrine." *Air Conditioning, Inc.* 845 F.2d at 296; *Compton* 831 F.2d at 591–94. In essence, this doctrine holds that a single transfer of a security interest from the debtor to the issuer of a letter of credit results in 2 transfers. The first transfer is the direct transfer to the issuer and the second transfer is an indirect transfer to the creditor who benefits from the granting of the security interest. *Compton* 831 F.2d at 591–92. By use of this fiction, they avoid confronting the issue of preference recovery from the bank as the initial transferee under § 550(a)(1) because they recognize only the "indirect transfer" to the creditor as a voidable transfer. *Cf. Levit v.*

*Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1195 n. 6 (7th Cir.1989). An alternative analysis would simply apply the plain language of the statute and recognize a transfer of the security interest to the bank as a single transfer which is a candidate for avoidance as a preference because it is "to or *for the benefit of* a creditor." 11 U.S.C. § 547(b)(1) (emphasis added). This Court makes no comment as to the soundness of the "direct/indirect transfer" analysis. But it is necessary to note that since it finds that there is no benefit flowing to the creditor by virtue of the granting of the security interest in this case there is no "indirect transfer" under a *Compton/Air Conditioning, Inc.* approach and nor is there a transfer "for the benefit of a creditor" under the alternative approach.

without effect. The effect was that it induced NCNB to extend the letter of credit beyond August 31, 1989 to June 30, 1990. The plaintiff argues that a benefit accrued to National Union because if the letter had not been extended then National Union would have been unable to draw on the letter as it did in December of 1989 and February of 1990. But this argument ignores reality. On August 31, 1989, NCNB had in hand a sight draft from National Union for the full amount of the $1,500,000 letter. They also had handwritten instructions to the effect that the draft was not to be cashed *only if the letter of credit was extended.*[2] Because the letter was extended, NCNB returned the draft as instructed. But if no security interest had been granted and consequently no extension to the letter had been made, then NCNB was obligated to pay on the draft. The net effect was that *the time of National Union's draw* on the draft was changed *but not the certainty of payment.* Accordingly, the security of National Union's position was unchanged and this Court finds no benefit flowing to National Union by virtue of the fact that they ultimately drew on the letter some months later than they would have absent the granting of the security interest and extension of the letter.

### D. *National Union Received no More Than They Would Have in a Chapter 7 Liquidation Bankruptcy*

■ The other § 547(b) preference element in dispute is the requirement that to be voidable as a preference, the transfer of the debtor's property must be one

> that enables [the] creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of [the Bankruptcy Code];
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code].

11 U.S.C. § 547(b)(5).

As previously pointed out, Security Services' obligation to National Union was se-

---

**2.** The plaintiff argues that even if this Court rejects their legal arguments the Court still cannot grant summary judgment in favor of National Union because of the existence of a dispute as to a matter of material fact. The plaintiff asserts that there is sufficient doubt as to whether NCNB did have the sight draft in hand on August 31, 1989, to preclude summary judgment. But this chimera of a factual dispute does not rise to the level necessary to cause this Court to decline to grant a summary judgment. "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). National Union has placed before the Court 1) a copy of the sight draft dated August 31, 1989; 2) a copy of the express mail request executed by the AIGRM employee who initiated the sight draft for National Union bearing the Federal Express number of the package containing the sight draft; 3) a copy of the Federal Express delivery record showing that the same package number was delivered to its destination on 8–31–91 at 9:40 a.m.; 4) a copy of NCNB's incoming mail log confirming receipt of that package on August 31, 1989; and 5) a copy of the handwritten note which accompanied the sight draft with NCNB's date stamp showing receipt on August 31, 1989. The plaintiff bases its claim of factual dispute on 1) correspondence between the attorneys for NCNB and plaintiffs attorney's

wherein plaintiffs attorneys are informed that nobody at NCNB recalls presentation of the sight draft on August 31, 1989; 2) letters from the Federal Express indicating an inability to locate records of delivery to NCNB from August 30, 1989 to September 10, 1989 (these records apparently were discovered and supplied to the Court by the defendant's attorneys); 3) confused deposition testimony of AIGRM employees as to which one of two possible employees sent the sight draft and whether it was sent on August 29 or August 30; and 4) plaintiff's doubt as to the credibility of one of the AIGRM employees. Certainly "mere correspondence between ... counsel ... does not meet the showing required to create a genuine issue of material fact under rule 56." *Vigler v. Commercial Insurance Company of Newark,* 707 F.2d 769, 771 (3d Cir.1983). The letters from Federal Express are apparently no longer valid because those records have now been provided. Finally, the alleged confusion and credibility questions as to deposition testimony of AIGRM employees simply does not speak to the issue of whether or not NCNB received the sight draft by August 31, 1989. If a reasonable jury could not find in the non-moving party's favor on a particular factual issue then they have not succeeded in raising a genuine issue of material fact under rule 56. *See J & B Co. v. Bellanca Aircraft Corp.,* 911 F.2d 152, 154 (8th Cir.1990). Plaintiff has not made an adequate showing such that a reasonable jury could find in their favor on this issue.

cured by the letter of credit from 1986 until National Union exhausted the letter in February of 1990. National Union did not have a security interest in property of the debtor, but its position was secure nonetheless because of the independent operation of a letter of credit. *See* White & Summers, *supra,* § 19–2. Had the transfer of the security interest to NCNB never taken place, the letter of credit which secured Security Services' obligation would have expired on August 31, 1989. On that date, NCNB had in hand a properly executed sight draft from National Union to draw down the full $1,500,000 amount of the letter of credit. The only qualification to NCNB's obligation to pay on the draft was the handwritten note asking for the return of the draft in the event that the letter was extended. If the security interest in freight bills and receivables had not induced NCNB to extend the letter, NCNB was obligated to pay on the draft. Thus, the only effect of the transfer of the interest in the debtors' property was to cause National Union to receive $1,500,000 by way of sight drafts paid in December of 1989 and February of 1990 rather than receiving the same amount of money on August 31, 1989. The letter of credit, once issued, is not property of the debtor and cannot be brought into the bankruptcy estate. *In re North Shore & Central Illinois Freight Co.,* 30 B.R. at 379. Therefore, it is clear that had the transfer of a security interest not taken place and had National Union looked instead to the debtor's bankruptcy estate, in a chapter 7 bankruptcy, for payment of its claims, its position would not be materially changed.

### CONCLUSION

Because this Court finds that National Union did not benefit from Security Services' grant of a security interest to NCNB, the plaintiff has failed to demonstrate that there was a transfer "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Further, because the position of National Union was not materially changed by the transfer of a security interest in the debt-or's property, the plaintiff has failed to demonstrate that National Union received more than it would have if the transfer had not been made. Therefore, the plaintiff's motion for summary judgment is DENIED and the defendant's cross motion for summary judgment is GRANTED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.