In re BAJA BOATS, INC., Debtor.

The OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
BAJA BOATS, INC., Plaintiff,

v.

NORTHERN LIFE INSURANCE COMPANY; The North Atlantic Life Insurance Company of America; and Ministers Life Insurance Company fka Ministers Life—A Mutual Life Insurance Company, Defendants.

Bankruptcy No. 94–60141.
Adversary No. 96–6021.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 5, 1996.

Thomas C. Scott, Thompson, Hine & Flory, Columbus, OH, for Plaintiff.

Dennis M. Ryan, Faegre & Benson, Minneapolis, MN, for Defendants.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Plaintiff, The Official Committee of Unsecured Creditors of Baja Boats, Inc., has filed the current litigation seeking to avoid an allegedly preferential transfer. Presently before the court is the motion of Defendants Northern Life Insurance Company (Northern Life), The North Atlantic Life Insurance Company of America (North Atlantic Life) and Minnesota Mutual Life Insurance Company[1] (Minnesota Mutual) for summary judgment. A response in opposition to the motion has been filed and the Court has taken the matter under advisement. For the reasons stated below, Defendants' motion will be GRANTED.

### FACTS[2]

Baja Boats, Inc. (Baja) entered into a note purchase agreement with the Northwestern National Life Insurance Company (Northwestern National), Northern Life, North Atlantic Life and Ministers Life—A Mutual Life Insurance Company (Ministers Life) on November 30, 1989 (collectively, Noteholders). The Noteholders each bought a promissory note from Baja. The aggregate principal amount of the notes was $6,515,000.00 which Baja was obligated to repay over 180 months. Northwestern National and Ministers Life later transferred their interests in the notes they purchased to other Defendants.

Under the terms of the note purchase agreement, Baja was required to post an irrevocable letter of credit in favor of the Noteholders as security for Baja's obligations under the notes. On December 6, 1989, BancOhio National Bank, now known as National City Bank (NCB), issued an irrevocable standby letter of credit in the amount of $6,515,000 on behalf of Baja in favor of the Noteholders' collateral agent. Baja delivered to NCB a promissory note in the amount of $2,000,000.00 dated November 20, 1989. Baja also executed and delivered to NCB a reimbursement agreement dated December 6, 1989, under the terms of which Baja agreed to reimburse NCB for any funds that NCB disbursed pursuant to the letter of credit. To secure its obligations under the terms of the promissory note and the reimbursement agreement, Baja gave NCB a security interest, dated November 20, 1989, in all or substantially all of its personal property and a mortgage, also dated November 20, 1989, on certain parcels of its real property.

In November 1993, Baja defaulted on its obligations under the terms of the notes. On December 13, 1993, the Defendants' collateral agent drew on the letter of credit in the total amount of $6,371,967.00. NCB paid the Defendants their respective shares of the letter of credit draw.

On February 2, 1994, Baja filed for relief under Chapter 11 of Title 11 of the United States Code. The Plaintiff brought the present adversary proceeding on February 1, 1996, alleging that the Defendants' draw on the letter of credit resulted in a preferential transfer which should be avoided.

Defendants filed a motion to dismiss on March 6, 1996, that was denied by the Court's order of July 1, 1996. In the motion, Defendants asserted that no preference action could be maintained since there were no transfers made within 90 days of the filing of the debtor's petition for relief. The Court generally agreed with Defendants, but de-

1. The complaint erroneously names Ministers Life Insurance Company as a party although its interest has been assigned to Minnesota Mutual. However, as stated in the Court's order of July 1, 1996, Minnesota Mutual has accepted service of the summons and complaint in this adversary proceeding and is defending this action as if it were named.

2. The facts, as related by this opinion, are largely taken from the Court's previous order of July 1, 1996.

nied their motion since the provisions of Section 547(e)(3) of Title 11 of the United States Code created the possibility that some property was transferred within the 90 day period.

## DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F). This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## I. Summary Judgment

Standards on summary judgment under Rule 56, of the Federal Rules of Civil Procedure are made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56 provides for a grant of summary judgment as follows:

> (c) ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). The ultimate

burden of demonstrating the existence of a genuine issue of material fact, however, lies with the nonmoving party. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. *See also, First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial."* Fed.R.Civ.P. 56(e) (emphasis added).... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations and footnotes omitted).

As in the previous motion to dismiss, Defendants assert that Plaintiff's action must fail since the terms of their deal with Baja do not meet the technical requirements for a preference action under 11 U.S.C. § 547(b).[3] Specifically, Defendants aver that Sections 547(b)(1) and (b)(5) have not been met since they received no benefit from the transfer and did not receive more than they would have been entitled to under a Chapter 7 liquidation.

## II. Letters of Credit

■ In order to shed sufficient light on Defendants' arguments, an examination of letters of credit and their treatment under

---

**3.** Section 547 in relevant part provides:

> (b) Except as provided in subsection (C) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or

> (B) between 90 days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of [Title 11];
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of [Title 11].

the Bankruptcy Code is necessary. Letters of credit, as used in the case at bar, are three party transactions where the debtor obtains a letter from a lending institution which names a creditor of the debtor as the beneficiary. *Security Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA. (In re Security Services Inc.)*, 132 B.R. 411, 414 (Bkrtcy.W.D.Mo.1991). There is an independence of relationship that sets a letter of credit apart from a surety relationship. *Id.* "[O]nce a proper demand has been made by the beneficiary, it is not a proper defense against payment that the creditor did not perform its end of the bargain between debtor and creditor." *Id.*

Because of this principle, it has been well established that a letter of credit and its proceeds are not the property of a debtor's estate. *Kellogg v. Blue Quail Energy, Inc. (In the Matter of Compton)*, 831 F.2d 586, 589 (5th Cir.1987) (citing *In re W.L. Mead, Inc.*, 42 B.R. 57 (Bkrtcy. N.D.Ohio 1984), modified on other grounds, 835 F.2d 584 (5th Cir.1988)). A trustee cannot enjoin the post petition payment of a letter of credit because such a payment is not a transfer of the debtor's property. *Id.*

Plaintiff, undoubtedly understanding this analysis, does not argue that the payment by NCB to Defendants under the terms of the letter of credit constitutes an avoidable preference. Rather, Plaintiff maintains that augmentation of Defendants' interest resulted from the debtor's payments to NCB and created a preferential transfer for the benefit of Defendants. This theory is known as the direct/indirect transfer doctrine and has a long history of recognition in the federal courts. *Compton*, 831 F.2d at 591; *See also Thomas E. Ray v. City Bank and Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490, 1494 (6th Cir.1990). In 1912 the Supreme Court stated:

> To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another, for his benefit. If the bankrupt has made

a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it. A 'transfer' includes 'the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security.

*National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912). The direct/indirect transfer doctrine is also supported by the language of Section 101(54) of Title 11 of the United States Code.[4]

Under the direct/indirect analysis, the mere fact that the direct transfer to a creditor, such as the payment of a letter of credit, is not subject to a preference attack will not foreclose the possibility that the indirect transfer, such as the benefit a creditor receives from the transfer between a debtor and a bank issuing a letter of credit, will result in a successful preference action under the provisions of Section 547. *Compton*, 831 F.2d at 591–92; *American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F.2d 293, 296 (11th Cir.1988), cert. denied, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *Security Services*, 132 B.R. at 414. Such indirect transfers will be declared preferential if they satisfy the requirements of Section 547(b).

III.  Benefit Analysis under Section 547(b)

As previously stated, Defendants argue that no preference has occurred in this case since they have not benefited from any of the transfers that may have been completed during the relevant preference period. The facts of this case support Defendants' argument. Putting the evidence in the light most favorable to Plaintiff, the non-moving party, it is clear that the credit arrangement between the debtor and Defendants was

---

4. Section 101(54) states:
"[T]ransfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as security interest and foreclosure of the debtor's equity of redemption.

completed in December of 1989. While transfers between NCB and the debtor may have occurred numerous times in the ensuing years, they were never intended to, and could not have benefited Defendants. Under the terms of the letter of credit, Defendants were entitled to payment upon Baja's default regardless of NCB's status or the effect that payment would have on the relationship between the debtor and the bank.

By virtue of the 1989 agreement, Defendants' right of payment was not contingent on the occurrence of transfers between the debtor and NCB. If no transfer occurred, it would be undisputed that no preference action could lie. Therefore, it would be illogical to rule that a successful action could be created merely by a serendipitous and independent transfer between NCB and the debtor that in no way increased the funds available to Defendants.

While Plaintiff has argued to the contrary, it has provided no authority that supports its position. It states that Defendants' argument is foreclosed by the binding authority announced in a recent Sixth Circuit opinion. *Taunt v. Fidelity Bank of Michigan (In re Royal Golf Products Corp.)*, 908 F.2d 91 (6th Cir.1990). That decision, while arising from a similar fact pattern, did not deal with the benefit issue created by Section 547(b)(2) and currently before the Court. In fact, the *Royal Golf* court specifically stated that the sole issue before it was whether the letter of credit arrangement involved in that case created a transfer of the debtor's property for the purposes of 574(b)(1). *Id.* at 93.

Plaintiff also cites a recent bankruptcy court decision from Texas, *Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L.P.)*, 178 B.R. 426 (Bkrtcy.W.D.Tex.1995). However, that was a case where actual indirect benefit was conferred upon the creditor by virtue of the fact that a letter of credit was used to convert a previously unsecured debt into a secured debt, payable ahead of all other unsecured creditors upon default. That is a situation materially different from the case at bar where the Defendants obtained their secured status through the letter of credit immediately upon the creation of their lending arrangement.

## CONCLUSION

Under the provisions of Section 547(b), a transfer may only be voided upon a showing that all six elements of the section have been satisfied. Based upon the above analysis, the Court concludes that Plaintiff would be unable to prove that a transfer to or for the benefit of Defendants occurred if this case were to proceed to trial. Accordingly, Defendants are entitled to summary judgment. Their argument concerning Section 547(b)(5) need not be considered.

An order in accordance with the foregoing shall issue forthwith.